In the Matter of Proceedings to Obtain a Fair, Just, Equitable and Reasonable Assessment of Real Estate and a Reduction of Real Estate Taxes Assessed in 1973 and 1974, Payable in 1974 and 1975, Respectively.

**PALATIAL PROPERTIES, INC., Respondent,**

v.

**COUNTY OF HENNEPIN, Appellant.**

No. 47983.

Supreme Court of Minnesota.

April 14, 1978.

Gary W. Flakne, County Atty., Donald J. Lalor, Asst. County Atty., Minneapolis, for appellant.

Wiese & Cox and Paul G. Neimann, Minneapolis, for respondent.

PETERSON, Justice.

This appeal arises from two petitions[1] filed in the district court by Palatial Properties, Inc. (Palatial), objecting to Hennepin County's property tax treatment of an apartment building which Palatial was converting into condominiums. The county reassessed the property shortly after Palatial filed a declaration of condominium ownership pursuant to the Minnesota Condominium Act, Minn.St. c. 515. The effect of the reassessment was to sharply increase Palatial's property taxes on the units it continued to rent until they were sold to buyers as condominiums. The district court held that Palatial's property taxes on the unsold units should not have been based on the reassessed condominium value. We affirm the judgment below.

On January 2, 1972, Palatial was the owner of a 108-unit apartment complex in Mound, Minnesota. During 1972, the general rule was for real property to be assessed in even-numbered years.[2] Pursuant to this rule, Palatial's complex was assessed as of January 2, 1972, as having a fair market value of $1,234,355. There is no dispute as to the amount of this assessment, and it is also undisputed that at the time of the 1972 assessment the entire complex was class 3d residential real estate under Minn.St. 273.13, subd. 19.

In October 1972, Palatial filed with the register of deeds a declaration[3] establishing a plan for condominium ownership of the entire complex. Palatial then began selling units as condominiums and continued to rent the unsold units as it had before the declaration was filed.

Solely because of the condominium declaration, the county reassessed the complex as of January 2, 1973, and determined that its total value as a complex of 108 condominiums was $2,768,200, more than twice the previous assessment. The county used this higher 1973 assessment in calculating Palatial's property tax liability for the 51 units which remained unsold in 1973 and the 27 units which remained unsold in 1974.

1. The petitions were filed pursuant to Minn.St. c. 278, which authorizes the district court to hear challenges to real estate assessments.

2. Minn.St.1969, § 273.01.

3. The Condominium Act defines the "declaration" as "the instrument by which the property is submitted to the provisions of this chapter, as hereinafter provided, and such declaration as from time to time may be lawfully amended." Minn.St. 515.02, subd. 10. Under § 515.-11, the declaration must contain, along with other particulars, a description of the land, buildings, condominium units, and common facilities, a statement of the purposes for which the building and units are intended, the name of a person to receive service of process, and any other details the persons executing the declaration may deem desirable to set forth consistent with §§ 515.01 to 515.29.

In essence, the county contends that the filing of the condominium declaration removed the entire complex from the class 3d residential real estate classification and created new property (i. e., condominiums instead of rental units) which, under Minn.St. 1971, § 273.17, was properly assessed in 1973 as property which had "become subject to taxation since the last previous [even year] assessment * * *."

Though the county's argument is plausible, we find nothing in either the property tax statutes or the Condominium Act which indicates that the legislature intended the filing of the declaration to have this result. The Condominium Act in Minn.St. 515.22 does provide for separate assessment and taxation of the individual condominium units. But it seems clear from the context that the legislature intended this separate treatment to begin when the unit was sold to a condominium purchaser. If the legislature had intended the filing of the declaration to end the classification of class 3d residential real estate for the units which the executor of the declaration continued to rent, then such an intent would clearly have been indicated. Since the unsold units retained their class 3d residential classification, the trial court correctly held that their assessment could not be increased beyond the 5-percent limitation imposed by Minn. St.1974, § 273.11, subd. 2.

Our decision in this case finds support in the policy of encouraging home ownership, which underlies the Condominium Act. When a rental complex is converted to condominiums to allow home ownership, there will often be a transition period after the declaration is filed during which the complex owners search for condominium buyers and continue to rent the unsold units. If owners of rental complexes know that during this transition period their property taxes on the unsold units will remain stable and not sharply increase, the conversion of rental complexes to condominiums will be encouraged.

Affirmed.