750 P.2d 954

**FAIRWAY DEVELOPMENT COMPANY, Plaintiff–Appellant,**

v.

**BANNOCK COUNTY, Idaho; Lyle Leslie, Bannock County Assessor; Vivian Crozier, Bannock County Treasurer; Tom Katsilometes, Carolyn Meline and George Shiozawa, Bannock County Commissioners, Defendants–Respondents.**

No. 16734.

Supreme Court of Idaho.

Feb. 23, 1988.

**934**

Peterson, Moss, Olsen, Meacham & Carr, Idaho Falls, for plaintiff-appellant. Stephen D. Hall, argued.

Erich N. Storm, Deputy Pros. Atty., Pocatello, for defendants-respondents.

HUNTLEY, Justice.

Fairway Development Company appeals the trial court's grant of summary judgment to Bannock County, the Bannock County Commissioners, Assessor and Treasurer (hereinafter "Bannock"), after cross-motions for summary judgment were filed by both parties. Fairway had filed a complaint for review of decisions by the Board of Tax Appeals and by the Bannock County Commissioners, sitting as a Board of Equalization, which upheld the Bannock County Assessor's property tax evaluation of plaintiff's real property.

Since 1977, Fairway Development Company has owned and operated a fifty-six unit apartment complex known as "Fairway Estates" in Pocatello, Idaho. In October 1978, Fairway filed a Declaration of Condominium for Fairway Estates and has since attempted to sell the units as condominiums, while continuing to rent the unsold units as apartments. After the declaration, Fairway improved the common areas of Fairway Estates by, among other things, adding a pool and carports. To date, nine of the fifty-six units have been sold as condominiums.

Since the Declaration of Condominium, Bannock County has appraised each unit in Fairway Estates as a condominium, using the market data method (which looks to current open market sales of similar units). As a result, the appraised value increased from approximately $8,749 per unit to between $28,700 and $30,350 per unit; an average increase of 337%. Since 1980, Fairway has paid its property tax on Fairway Estates under protest, contending that Bannock County's assessment unconstitutionally and in violation of I.C. § 63–202[1]

---

1. Idaho Code § 63–202 provides:
**Rules and regulations pertaining to market value—duty of assessors.—**... [t]he rules and regulations promulgated by the state tax commission shall require each assessor to find market value for assessment purposes of all property within his county according to recognized appraisal methods and techniques as set forth by the state tax commission; provided, *that the actual and functional use shall be a major consideration* when determining market value for assessment purposes.... (Emphasis added).

ignores the "actual and functional use" of the units. Fairway contends that each year its overpayment due to the overassessment is approximately $14,000 per unit.

In September 1986, this Court received briefs and heard oral argument in this case under I.A.R. 12 certification of the trial court's denial of Fairway's motion for partial summary judgment. The appeal was dismissed and remanded for further proceedings, 111 Idaho 653, 726 P.2d 765. Since our remand, the trial court granted summary judgment to Bannock County.

By this appeal, we are required to determine whether the valuation scheme used by Bannock County, valuing Fairway Estates as entirely comprised of condominiums, either unconstitutionally violates ID. CONST. art VII, §§ 2 and 5, which guarantee uniform and proportional taxation, or controverts the mandate of I.C. § 63–202, which mandates that properties be assessed in accordance with their "actual and functional use." We hold that the classification of Fairway Estates as condominiums is proper and nonviolative of our constitution and affirm on that issue, but remand for a determination of whether an appropriate assessment method, one which employs an analysis giving "major consideration" to the property's "actual and functional use," was used.

I.

■ Fairway's first contention is that ID. CONST. art VII, §§ 2 and 5, guaranteeing uniform and proportional taxation, have been violated. Those constitutional provisions provide:

§ 2. **Revenue to be provided by taxation.**—The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided....

§ 5. **Taxes to be uniform—Exemptions.**—All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: provided further, that duplicate taxation of property for the same purpose during the same year, is prohibited.

Simply put, the constitutional provisions require that taxation must be proportional and uniform as among the "same class" of those to be taxed. Idaho's Condominium Property Act, I.C. § 55–1501 et seq., contains unequivocal expressions establishing the estate of "condominium" as a distinct classification.

I.C. § 55–1502. **Purpose—Public policy.**—Whereas, the availability of more adequate financing for construction, land development and improvement, and business expansion is beneficial and advantageous to the development of the state of Idaho and in the public interest, and, whereas, the condominium estate is a concept of holding property, which concept should be clarified in the state of Idaho to permit and facilitate the construction and development of condominiums and condominium projects, together with the financing of the same;

Now, therefore, *the condominium estate in property is hereby declared to be a lawful estate in property* and consistent with the public policy of the state of Idaho. (Emphasis added).

Fairway's filing of a Declaration of Condominium for Fairway Estates triggered the new classification of its property—a discrete classification which renders adjusted assessment on the basis of the altered classification constitutionally valid.

II.

■ More troubling is Fairway's second contention, namely, that Bannock County's

value for assessment purposes.... (Emphasis added).

assessment scheme failed to consider the "actual and functional use" to which the property was put, as mandated by I.C. § 63–202. As already noted, this code section requires that an assessment for market value for taxation purposes include actual and functional use as a "major consideration."

The trial court disposed of this issue without employing any substantive analysis. Instead, it treated Fairway's two separate contentions as one, holding:

> The next issue is that the county made an "unjust and unequal appraisal" which resulted in the appraised values of the unsold condominium units to be in excess of the value for comparable apartments in the same taxing district. *This issue, in the opinion of the court, must stand or fall depending upon the resolution of the first issue....* The court concludes as a matter of law that absent any withdrawal of the Declaration of Condominium, the entire property has been properly appraised and assessed as condominium properties and that by virtue of this finding, the issue of the propriety of the appraisal and resulting assessment was done correctly by the Bannock County Assessor.

In so ruling, the trial court erred as a matter of law regarding the disposition of the issue of the fairness of the assessment. A designation or classification of a complex as either "condominium" or "apartment" may be fair and just, while the subsequent method of assessment applied may fail to appropriately adhere to statutory requirements—such as the requirement that actual and functional use be given major consideration. The two questions are totally distinct. By ruling that the second issue (the fairness-of-assessment issue) was necessarily subsumed within the first (the classification issue), the trial court erroneously failed to address a major, and potentially valid, contention made by Fairway. Accordingly, this case must be remanded for a determination as to whether the sole appraisal method employed by the Bannock County Assessor (i.e., the market data method), resulted in an appropriate and fair

assessment given the actual and functional use of Fairway Estates.

In its opinion, the trial court relied upon several opinions as authority for the proposition that the transformation from apartment to condominium, accomplished by a Declaration of Condominium, conclusively altered the applicable assessment methods regardless of the actual status of the units as sold or unsold condominiums. In *Miami Atlantic Development Corp. v. Blake*, 334 So.2d 29 (Fla.App.1975), cert. den. 336 So. 2d 602 (Fla.1979), Dade County, Florida, assessed appellant's condominium development entirely as condominiums immediately after the Declaration of Condominium had been filed, despite the fact that many individual units had not been sold. However, that case is narrowly limited by the applicable Florida statute (Fla.Stat. § 193.011(2)), which specifically provided that "one of the factors to be considered in arriving at a just valuation is 'the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property.'" That court then stated that "[t]here is no question that the [property] in the very immediate future was expected to be used as a condominium...." *Miami Atlantic*, 334 So.2d at 30. In sum, *Miami Atlantic* is limited to its narrow statutory context. Unlike Florida, Idaho's statutes do not provide for assessment of property with respect to "the highest and best use to which the property can be expected to be put in the immediate future." Instead, present "actual and functional use" must be considered.

The trial court also relied upon *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 488 A.2d 766 (1985). Again, we are not persuaded to take a contrary view of the instant case by our reading of *Royal Parke*. In that case, the Vermont court stated that assessments of unsold condominium units should not include prospective value of the units as condominiums, as "that proposal would do violence to the statutory directive to assess at fair market value." *Royal Parke*, 488 A.2d at 768. The court ultimately ruled that, in the case before it, the fair market

value of the individual units was greater than the pre-Declaration assessed value.

The case law in this area indicates to us that determinations regarding the validity of assessment and classification of property for which Declarations of Condominium have been filed, but with units continuing to serve as rental apartments, hinge on the individual state's statutory scheme. In Idaho, we have a scheme which establishes the separate designation of condominium, but which also requires that actual and functional use be a major consideration used in assessing the property. Further, we have a statement of purpose in the Condominium Property Act which notes that the concept of "condominium" has been codified to be "clarified ... to permit and facilitate the construction and development of condominiums and condominium projects, together with the financing of the same; ...." I.C. § 55–1502.

Our statutory scheme, then, seems more analogous to the situation presented in *In re Application of County Collector*, 136 Ill.App.3d 496, 91 Ill.Dec. 132, 483 N.E.2d 414 (Ill.App.1985). There, a property owner sought to have all units in a complex subject to the Declaration of Condominium for assessment purposes, whether sold or not, because in Illinois the assessment for condominiums was less than that for apartments. The Illinois Court of Appeals rejected the property owner's assertion that the filing of a Declaration of Condominium transformed the property from rental property to residential property for property tax purposes, stating that "the underlying basis for taxation is not the form of ownership, but the use to which the owner puts his property. Here the use of the 12 unit condominium buildings is exactly the same as a 12 unit apartment building." *County Collector*, 136 Ill.App.3d at 500, 91 Ill.Dec. at 135, 483 N.E.2d at 417. As in *County Collector*, our inquiry no longer concerns the classification of the property, which we have already held must be "condominium" pursuant to the Declaration of Condominium, but concerns which assessment method adequately accounts for the actual and functional use of the property. (See also, *Palatial Properties, Inc. v. County of*

*Hennepin*, 265 N.W.2d 207 (Minn.1978), wherein the court held that the filing of a Declaration of Condominium could not alter tax treatment of unsold units within the complex, as such an assessment would fail to recognize the actual use of the property.)

In the instant case, Fairway Estates was assessed under the "market data method," which is a method which compares the property in question to other similar properties, with the value being "ascertained by looking to current open market sales of similar property." *Merris v. Ada County*, 100 Idaho 59, 63, 593 P.2d 394, 398 (1979). In *Merris*, we outlined the three generally accepted assessment methods:

> [T]here are three primary methods of determining market value: the cost approach, in which the value as determined by new cost or market comparison is estimated and reduced by accrued depreciation; the income approach, applicable to "income producing property" in which a capitalization rate is determined from market conditions and applied to net income from the property to determine appraised value; and the market data (comparison method) approach, in which value of the assessed property is ascertained by looking to current open market sales of similar property.

*Id.* at 63, 593 P.2d at 398.

The market data method, which was the only method used by the Bannock County Assessor in the instant case, simply may or may not return a proper valuation of the properties in this unique situation. Fairway has been unsuccessful in its attempts to market forty-seven of the fifty-six units as condominiums. Rather, those forty-seven units have been actually and functionally used for the past ten years as apartments. Certainly it cannot be said on this record that exclusive use of the market data approach based on sales of condominiums (when none have been sold for ten years) gives *major consideration* to the "actual and functional" use. It may not result in accurate or fair appraisals to define all other Bannock County condominiums as "similar properties" to Fairway

Estates and so use the values of those properties as the basis for assessing Fairway. We have previously noted that assessments pursuant to an approved method of appraisal may still be arbitrary, capricious and unreflective of fair market value in the actual and functional use of the property. *Merris, supra.* Here, we hold that Fairway cannot be assessed with attention given only to its property's classification as "condominium." Instead, the mandate of I.C. § 63-202 that "actual and functional use" be a major consideration in the assessment method must also be a significant factor in the equation. Accordingly, we reverse and remand for proceedings consistent herewith. Costs to appellant. No attorney fees awarded.

SHEPARD, C.J., BISTLINE, J., and McQUADE, J. Pro Tem., concur.

DONALDSON, J., sat, but did not participate due to his untimely death.