931 P.2d 1212

**Lee P. ENRIGHT and Nancy K. Enright, husband and wife, Plaintiffs–Respondents,**

**v.**

**Harold F. JONASSEN, Flora S.W. Kung–Jonassen, Husband and Wife, McCann–Daech–Fenton Realtors, an Idaho Partnership; Richard Fenton, Individually, Defendants–Appellants.**

**No. 22032.**

Supreme Court of Idaho,
Boise, November 1996 Term.

Feb. 3, 1997.

Brady, Lerma, Ctd., Boise, for appellants. Michael G. Brady argued.

Hawley, Troxell, Ennis & Hawley, Ketchum, for respondents. Edward A. Lawson argued.

McDEVITT, Justice.

This is a breach of fiduciary duty case that involves a real estate transaction in which, subsequent to the purchase, the real property was discovered to be located in a County Flood Plain Management District. After a six day court trial, the district court ruled in favor of the real estate purchasers, the respondents, Lee P. Enright (Lee) and Nancy K. Enright (Nancy) (collectively referred to as the Enrights).

## I.

### BACKGROUND AND FACTS

On May 23, 1990, Harold Jonassen and Flora S.W. Kung–Jonassen (collectively referred to as Jonassen), entered into a listing agreement with Mike McCann (McCann) of McCann–Daech–Fenton Realtors (the Realtor), to sell twenty acres Jonassen owed on Eagle Creek in Blaine County, Idaho. The listing price was $4,000,000.

The listing agreement indicated that the listed property was zoned R–2 1/2. McCann determined the listed property was zoned R–2 1/2 based upon McCann's inspection of a Blaine County zoning map that was located in the Realtor's office.

The newspaper advertisements published by McCann did not indicate the listed property was in a floodplain or that the listed property was in an avalanche overlay district. The advertisements indicated the listed property was zoned R–2 1/2.

The Enrights first became aware of the listed property by seeing a newspaper advertisement for the listed property. The advertisement described the listed property as a twenty acre parcel of land with wonderful horse property and great development potential, both of which caught the Enrights' attention.[1]

Lee called Mary Lou Mickelson, who had sold the Enrights a home on Fairway Road and Busterback Ranch, however, Mickelson was not available so Lee contacted the only other realtor Lee knew of in the area, Richard Fenton (Fenton). Fenton had contacted Lee previously regarding a prospective purchaser of the Enrights' Fairway Road home. Fenton was a real estate agent with the Realtor.

---

1. The newspaper advertisement described the listed property as being "zoned R–2 1/2 and may be subdivided. This is a wonderful estate horse property or a great development potential."

Fenton showed the Enrights the listed property. The Enrights liked the listed property, however, the Enrights ultimately realized they would only want 15 undeveloped acres, (lots 17, 18, and 19), and would not want the 5 developed acres on lot 16. Initially it appeared Jonassen would not split the 20 acres so that the Enrights could purchase only 15 of the 20 acres listed. However, after a third party made an offer on lot 16 and Jonassen made a counter offer for lot 16, the Enrights decided to make an offer on lots 17, 18 and 19.

Lee testified that:

You know, I was beginning to actively formulate in my own mind what this piece of property might be worth. And my remarks, I remember rather clearly actually saying to Dick, you know, almost seems too good to be true, that this is still sitting here in the Wood River Valley.

And I said: Are there any restrictions I don't know about? Are there any unusual building restrictions that would prohibit me from developing this property?

At which point he answered: No, just normal county building restrictions, which . . .

And then I think, on the following day, which is usually my fashion, after reflecting on that comment, in a phone call to him, I said: What exactly are those normal county building restrictions?

And at which point he gave me a height restriction on the buildings, which I think was thirty feet, thirty-five, I forget which, and the forty-foot setback from the property, from the lines.

Fenton testified that while he did not recall the specific conversation in which Lee asked if there were unusual building restrictions on the listed property, such a conversation "may very well have taken place." Fenton testified that if Lee asked if there were unusual building restrictions on the listed property Fenton would have said there were no unusual building restrictions. Nancy testified that Lee had asked Fenton if there were unusual building restrictions on the listed property and that Fenton responded in the negative.

Lee informed Fenton he was very concerned about water rights on the listed property based upon Lee's experience with the Enrights' Busterback Ranch which involved controversy with government offices and the Enrights' use of their water rights. Fenton advised Lee to consult an attorney regarding the water rights issue. Lee hired an attorney who completed a water rights analysis for lots 17, 18, and 19.

Lee informed Fenton in general terms that the Enrights had a tax related time pressure and that the Enrights would have to begin construction immediately. Lee testified that the Enrights had to either purchase a new home or build a new home before the end of September 1991 or pay a tax bill in excess of $800,000.

Fenton prepared the Real Estate Purchase and Sale Agreement and Receipt for Earnest Money (Agreement) for the purchase of lots 17, 18, and 19. The Agreement conditioned the Enrights' purchase upon obtaining an acquisition and construction loan and an analysis of water rights, avalanche conditions, and sunlight conditions. Lee determined the $1,500,000 purchase price based upon Fenton's representation that there were no building restrictions on lots 17, 18, and 19. At the time of making the offer to Jonassen on September 4, 1990, the Enrights did not know that portions of lots 17, 18, and 19 were in a floodplain district and the Enrights thought that lots 17, 18, and 19 were zoned R-2 1/2.

## II.

## PRIOR PROCEEDINGS

On October 8, 1992, the Enrights filed a complaint in the Fifth Judicial District Court for the County of Blaine, against Jonassen, the Realtor, and Fenton, (collectively referred to as appellants). The complaint alleged that on or about September 4, 1990, the Enrights entered into the Agreement with Jonassen. Under the terms of the Agreement, Jonassen would sell and the Enrights would purchase lots 17, 18, and 19 (hereafter referred to as the Property).

The complaint alleged that the Realtor acted as both the listing and selling agency, representing both Jonassen and the Enrights in the transaction. Fenton acted as an individual agent representing the Enrights in the transaction. On October 9, 1990, the Agreement was executed and Jonassen transferred title to the Property to the Enrights in exchange for full payment by the Enrights. The complaint alleged that the Enrights entered into and executed the Agreement based upon representations and warranties made by appellants.

The complaint alleged that after October 9, 1990 [2], the Enrights discovered the Property was located in a County Flood Plain Management District which required special permits and extraordinary costs, in order to improve and develop. The complaint alleged breach of contract, negligence, fraud, and negligent misrepresentation. The Enrights requested about $268,000 in special damages, costs, and attorney fees.

The Realtor and Fenton filed an answer on January 22, 1993, and an amended answer on March 30, 1993. Jonassen filed an answer on December 13, 1993. Jonassen admitted to entering into the Agreement under which Jonassen transferred the Property to the Enrights. The Realtor admitted the Realtor acted as both the listing and selling agency representing both the Enrights and Jonassen in the transaction. Fenton admitted acting as an individual agent representing the Enrights in the transaction.

On June 21, 1994, Jonassen filed a cross-complaint against the Realtor and Fenton alleging any award against Jonassen would be the direct and proximate result of the conduct of the Realtor and Fenton and requesting the Realtor and Fenton be ordered to satisfy any judgment that may be entered against Jonassen. The Realtor and Fenton denied the allegations in the Jonassen cross-complaint.

On November 30, 1994, the district court dismissed the third claim for relief, fraud, alleged in the Enrights' complaint.

2. The Enrights became aware of the existence of the floodplain district on the Property on Octo-

On December 9, 1994, Jonassen entered into a stipulation with the Realtor and Fenton, stipulating that the Realtor and Fenton would appear for and defend Jonassen in the Enrights' action against Jonassen, the Realtor, and Fenton. Jonassen reserved all rights under its cross-complaint pending the outcome of the litigation.

A court trial was held from December 13, 1994 through December 16, 1994, December 27, 1994, and December 28, 1994. On December 13, 1994, the parties entered into a stipulation and order. On January 12, 1995, the district court entered its amended findings of facts and conclusions of law. The district court concluded that the Realtor and Fenton owed a duty of care as well as a fiduciary duty to the Enrights as the Enrights' real estate agent, that the Realtor and Fenton breached their duty to the Enrights, that the Realtor and Fenton's breach substantially caused the Enrights' harm, and that the Realtor and Fenton were liable for Enrights' damages caused by the Realtor and Fenton's breach. The district court found that as a direct and proximate result of the Realtor and Fenton's breach, the Enrights incurred costs and were entitled to an award in the amount of $376,337. The district court also awarded the Enrights $60,000 which was the amount of commission that was paid to the Realtor and Fenton.

On February 2, 1995, the appellants filed a number of post-trial motions, including a motion for a new trial. On April 13, 1995, the district court entered an order denying the appellants' post-trial motions. On May 31, 1995, the district court entered a judgment on cross-claim in favor of Jonassen and against the Realtor and Fenton.

The district court entered a corrected amended judgment on May 16, 1995, awarding the Enrights a judgment in the principal amounts of $376,377 and $60,000. The appellants appealed to the Idaho Supreme Court.

## III.

### STANDARD OF REVIEW

A trial court's findings of fact will be upheld on appeal if the findings are sup-

ber 16, 1990.

ported by substantial and competent, although conflicting, evidence. *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.,* 127 Idaho 432, 434, 901 P.2d 1333, 1335 (1995). "When the trial judge is the trier of fact, it is his or her province to weigh the conflicting evidence and testimony and to judge the credibility of witnesses." *Id.* at 435, 901 P.2d at 1336. We freely review the trial court's conclusions of law. *Id.*

## IV.

## THE REALTOR AND FENTON BREACHED THEIR FIDUCIARY DUTY TO THE ENRIGHTS

Appellants argue that there was insufficient evidence to support the district court's finding that the Realtor and Fenton failed to make full, fair, and timely disclosure to the Enrights of all facts they knew or should have known that were material to the purchase of the Property.

■ In *Mallory v. Watt,* 100 Idaho 119, 594 P.2d 629 (1979), this Court discussed a real estate broker's duty to its principal. In *Mallory* we stated:

A real estate broker is an agent standing in a fiduciary relation to his principal. Because of this relationship, the agent is obligated to exercise reasonable care, skill, and judgment in securing the best bargain possible for his principal. Moreover, the agent must make a full, fair, and timely disclosure to his principal of all facts within the agent's knowledge which are, or may be, material to the transaction and which might affect the principal's rights and interests or influence his actions.

*Mallory,* 100 Idaho at 122, 594 P.2d at 632 (citations omitted). In *Cooke v. Iverson,* 94 Idaho 929, 500 P.2d 830 (1972), we recognized that

[b]ecause of the specialized service the real estate broker offers in acting as an agent for his client there arises a fiduciary relationship between them; it is incumbent upon him to apply his abilities and knowledge to the advantage of the man he serves; and to make full disclosure of all

facts which his principal should know in transacting the business.

*Cooke,* 94 Idaho at 933, 500 P.2d at 834.

In the present case the district court found that the Realtor and Fenton owed a fiduciary duty to the Enrights to determine whether the Property was in a floodplain district. The district court defined that duty based upon an Idaho standard of care, rejecting the Realtor and Fenton's contention that there was a local standard of care in Blaine County that only required the Realtor and Fenton to look at a county zoning map, regardless of what the county ordinances mandated.

The district court found that the Realtor and Fenton breached their duty to determine whether the Property was in a floodplain district. The district court's decision was supported by McCann and Fenton's acknowledgement that sections 17.3 and 17.31 of the Blaine County Ordinance stated:

17.3 *ESTABLISHMENT OF THE FLOODPLAIN MANAGEMENT DISTRICT.* The Floodplain district is hereby established. The regulations of this district apply to all lands within the jurisdiction of Blaine County that lie within the 100–year floodplain boundaries as determined by the Federal Emergency Management Agency Flood Boundary and Floodway Map study for Blaine County, Idaho (unincorporated areas) dated March 16, 1981 with accompanying Flood Insurance Maps is hereby adopted by reference and declared to be a part of this ordinance. The Flood Insurance Study is on file at the Planning Office, 206 1st Avenue South, Hailey, Idaho. Additional documents can be referenced and used as long as they are not in conflict with the Flood Insurance Study.

17.31 Rules for Interpretation of District Boundaries. The floodplain management district boundaries are represented on the zoning map for Blaine County. The precise boundaries shall be determined by on-site elevations as interpreted from the adopted Flood Boundary and Floodway Map floodplain studies.

Both McCann and Fenton testified that they did not look at the Flood Insurance

Maps referred to in sections 17.3 and 17.31 of the Blaine County Ordinance. The district court found that "[h]ad Realtors (that is McCann or Fenton) examined the FEMA map for Eagle Creek, it would have been obvious the Subject Property was in the floodplain and therefore in, and subject to, the restrictions of the FP zoning district."

The evidence supports the district court's finding. We affirm the district court's finding that the Realtor and Fenton breached their fiduciary duty to the Enrights to discover and disclose the existence of a floodplain district on the Property.

## V.

## THE ENRIGHTS ARE NOT ENTITLED TO THE REALTOR AND FENTON'S REAL ESTATE COMMISSION

■ The Realtor and Fenton argue that the district court's decision awarding the Enrights $60,000 as disgorgement of the Realtor and Fenton's commission was improper. We agree.

The Realtor and Fenton's real estate commission was paid out of the funds Jonassen received for the sale of the Property. The Enrights were not entitled to any portion of the real estate commission and have no standing to pursue disgorgement of the Realtor and Fenton's commission. *See Bear Lake Educ. Ass'n v. Board of Trustees of Bear Lake Sch. Dist. No. 33*, 116 Idaho 443, 447–48, 776 P.2d 452, 456–57 (1989) (holding determination of whether plaintiff has standing is whether plaintiff has alleged personal stake in outcome of controversy to warrant invocation of court's jurisdiction and justify court's exercise of remedial powers). We reverse the district court's decision awarding the Enrights $60,000 as disgorgement of the Realtor and Fenton's real estate commission.

## VI.

## THE DISTRICT COURT'S AWARD OF DAMAGES WAS NOT SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

Appellants seek a reversal of the district court's decision or a new trial and/or remittitur under I.R.C.P. 59(a)(5).

■ Idaho Rule of Civil Procedure 59(a)(5) states that a new trial may be granted if "[e]xcessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice," is shown. Idaho Rule of Civil Procedure 59(a)(5) does not apply to the facts of this case since this action was tried without a jury.

■ While there was evidence in the record to support most the district court's award of damages, some of the damages were not supported by the evidence. The Enrights' special septic system cost $11,137.65. Testimony established that a normal septic system, without a floodplain district, would run between $1,500 to $2,000, and that such amount might have to be doubled, (to about $4,000), due to the size of the Enrights' home.

The district court awarded the Enrights $10,000 for the Enrights' special septic system, due to the existence of the floodplain district. The Enrights' home would have required a septic system regardless of whether the home was on a floodplain district. Lee testified that he was told prior to offering to purchase the Property that he would have to put in a septic system. The award of $10,000 to compensate the Enrights for the special septic system was not supported by the evidence.

The district court awarded the Enrights damages based in part upon the amount stated in exhibit 60. Exhibit 60 is a bill for "[e]ngineering fees for Enright Pond." It is unclear whether engineering services for the "Enright Pond" were related to the existence of the floodplain. The record does not indicate how the engineering services for the "Enright Pond" in 1993 were related to the existence of the floodplain district. Lee described exhibit 60 as "a summary of costs that I was expected to pay directly to Blaine County for either consultant information they obtained or for permits themselves in the construction process." The Enrights' home was completed by the Enrights' September 30, 1991 tax deadline. We remand to the district court for entry of an order regarding

the amounts of damages consistent with this opinion.

## VII.

## CONCLUSION

The decision of the district court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. No costs or attorney fees are awarded.

TROUT, Chief Justice, JOHNSON and SCHROEDER, JJ., and N.R. SMITH, J. Pro Tem., concur.