67 P.3d 45

**THE SENATOR, INC., Appellant– Appellant on Appeal,**

v.

**ADA COUNTY, BOARD OF EQUAL- IZATION, Respondent–Respon- dent on Appeal.**

No. 27402.

Supreme Court of Idaho, Boise, December 2002 Term.

April 2, 2003.

Davison, Copple, Copple & Copple, Boise, for appellant. E. Don Copple argued.

Hon. Greg H. Bower, Ada County Prosecuting Attorney; Teresa A. Baker, Deputy Prosecuting Attorney, Boise, for respondent. Teresa A. Baker argued.

EISMANN, Justice.

This is an appeal from a judgment of the district court affirming the tax assessment of a mobile home/manufactured home park. The taxpayer contends that to give major consideration to the actual and functional use of the park, the assessment must, as a matter of law, take into account the actual vacancy rate of the space rentals. We disagree and affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

The Senator, Inc., owns a mobile home/manufactured home park named "The Senator Retirement Community" (herein "Park") located in Boise, Ada County, Idaho. The 18.99–acre Park was built in 1968 as a mobile home park. In 1976 Congress enacted statutes regulating the mobile housing industry. As a result, mobile housing built prior to 1976 is called a mobile home, and mobile housing built from 1976 to the present is called a manufactured home. In the early 1990's, the Park adopted a policy of phasing out the mobile homes in the Park and only renting spaces for manufactured homes. In 1993 it also decided to restrict its renters to persons aged 55 years or older.

In 1999, the Ada County Assessor assessed the value of the Park at $2,241,883. The Park appealed to the Ada County Board of Equalization, which affirmed the 1999 assessment. The Park then appealed to the Idaho

State Board of Tax Appeals, which is permitted to receive further evidence on appeal. IDAHO CODE § 63–511(2) (2000). After a hearing, the Board of Tax Appeals issued a decision and order finding that the value of the Park for assessment purposes was $1,938,500. The Park appealed the Board's determination to the district court, which determines such appeals in a trial de novo without a jury. IDAHO CODE § 63–3812(c) (2000).

In 2000, the Ada County Assessor assessed the value of the Park at $1,938,500. The Park appealed to the Ada County Board of Equalization, which affirmed the assessment. The Park then appealed to the district court pursuant to Idaho Code § 63–511(3), which provides: "Any appeal that may be taken to the board of tax appeals may, during the same time period, be taken to the district court for the county in which the property is located." The district court hears such appeals in the same manner as the appeal would be heard before the Board of Tax Appeals under Idaho Code § 63–3812(c).[1] *Riverside Dev. Co. v. Vandenberg*, 137 Idaho 382, 48 P.3d 1271 (2002).

Both cases were consolidated in the district court. It heard the matter as a trial de novo and issued its memorandum decision on January 23, 2001. The Park contended that the assessed value was erroneous for two reasons. First, it failed to take into consideration the actual and functional use of the property, which the Park contends should take into consideration its space rental vacancy rate. Second, the Park contended that the assessment included an amount for business goodwill. The district court rejected these arguments. It found that the Park had failed to show by clear and convincing evidence that the assessed value of its property failed to take into consideration "the actual and functional use" as required by Idaho Code § 63–208 and that the assessed value included business goodwill in violation of Ida-

---

1. Idaho Code § 63–3812(c) (2000) provides:

   Appeals may be based upon any issue presented by the appellant to the board of tax appeals and shall be heard and determined by the court without a jury in a trial de novo on the issues in the same manner as though it were an original proceeding in that court. The

   court may affirm, reverse or modify the order, direct the tax collector of the county or the state tax commission to refund any taxes found in such appeal to be erroneously or illegally assessed or collected or may direct the collection of additional taxes in proper cases.

ho Code § 63–602L. On March 12, 2001, the district court entered its judgment, and the Park then timely appealed.

## II. ISSUES ON APPEAL

A. Must the actual vacancy rate of the manufactured home rental lots in the Park be considered when determining the actual and functional use of the Park's real property?

B. Was the district court's decision supported by substantial and competent evidence?

C. Did the county assessor improperly include business goodwill in valuing the Park's real property?

## III. ANALYSIS

The district court determines the appeal of the county assessor's valuation in a trial de novo without a jury as though it were an original proceeding in that court. *Riverside Dev. Co. v. Vandenberg,* 137 Idaho 382, 48 P.3d 1271 (2002); IDAHO CODE § 63–3812(c) (2000). The issues before the district court are those raised below. IDAHO CODE § 63–3812(c) (2000). The county assessor's valuation of property for purposes of taxation is presumed correct, and the burden of proof is on the taxpayer to show by clear and convincing evidence that the taxpayer is entitled to the relief claimed. *Roeder Holdings, L.L.C. v. Board of Equalization of Ada County,* 136 Idaho 809, 41 P.3d 237 (2001). In 1999, the assessor's valuation of the Park was $2,241,883, but on appeal the Board of Tax Appeals reduced that assessment to $1,938,500. Because the Ada County Board of Equalization did not appeal the decision of the Board of Tax Appeals, the lower figure of $1,938,500 is considered the valuation that is presumed correct for the purposes of the proceedings in the district court. A trial court's findings of fact will be upheld on appeal if the findings are supported by substantial and competent evidence. *Enright v. Jonassen,* 129 Idaho 694, 931 P.2d 1212 (1997). It is the province of the trial judge to weigh the conflicting evidence and testimony and to judge the credibility of witnesses. *Id.* We freely review the trial court's conclusions of law. *Id.*

**A. Must the Actual Vacancy Rate of the Manufactured Home Rental Lots in the Park Be Considered When Determining the Actual and Functional Use of the Park's Real Property?**

Generally, all real property subject to property taxation must be assessed annually at market value as of 12:01 a.m. on the first day of January in the year in which such property taxes are levied. IDAHO CODE § 63–205(1) (2000). Market value is to be determined according to the requirements of Title 63, Idaho Code, and rules promulgated by the Tax Commission. *Id.* Idaho Code § 63–201(10) (2000) defines market value as follows:

> "Market value" means the amount of United States dollars or equivalent for which, in all probability, a property would exchange hands between a willing seller, under no compulsion to sell, and an informed, capable buyer, with a reasonable time allowed to consummate the sale, substantiated by a reasonable down or full cash payment.

Rule 217 of the Property Tax Administrative Rules adopted by the Tax Commission provides that when assessing real property, the assessor shall consider the sales comparison approach, the cost approach, and the income approach. IDAPA 35.01.03.217.02. In addition, Idaho Code § 63–208 (2000) provides that "the actual and functional use shall be a major consideration when determining market value for assessment purposes." At issue in this case is what is meant by the phrase "the actual and functional use."

When determining the market value of the Park, the deputy assessor used all three methods, but she gave the most weight to the income approach. In her calculations, she used a three percent vacancy rate, which she testified was the typical vacancy rate in the market. The Park's actual vacancy rate was 26% in 1999 and 32% in 2000. The Park contends that the income approach must be based upon the Park's actual vacancy rate in order to take into account the actual and functional use of the property. It argues, "Here 88 spaces of Appellant's manufactured

home community were occupied with the remaining 31 spaces vacant. Thus, the actual and functional use of Appellant's property as of January 1, 1999 was a two-thirds occupied manufactured home community and one-third as bare ground with site improvements available."

■ The legislature has not defined the phrase "actual and functional use." When interpreting a statute, we must begin with the literal words of the statute, giving the language its plain, obvious and rational meaning. *Thomson v. City of Lewiston,* 137 Idaho 473, 50 P.3d 488 (2002). Our goal is to give effect to the purpose of the statute and the legislative intent in enacting it, which may be implied from the language used or inferred on grounds of policy or reasonableness. *Id.* The interpretation of a statute is an issue of law over which we exercise free review. *State v. Maidwell,* 137 Idaho 424, 50 P.3d 439 (2002).

■ Real property is typically valued at its highest and best use. That determination takes into consideration the uses that are legally permissible, physically possible, financially feasible, maximally profitable, and reasonably probable in order to arrive at the highest value for the property. The highest and best use of real property may not be its present use, or the use for which any of its improvements were designed.

■ In 1971 the legislature added to what was then Idaho Code § 63–202 (the forerunner of Idaho Code § 63–208) the requirement that "the actual and functional use shall be a major consideration when determining market value of commercial and agricultural properties." Ch. 317, § 1, 1971 Idaho Sess. Laws 1264. In 1996, the legislature repealed former Idaho Code § 63–202 and enacted Idaho Code § 63–208, which retains the requirement that the actual and functional use shall be a major consideration when assessing real property, but it does not limit that requirement to commercial and agricultural properties. Ch. 98, §§ 1 & 3, 1996 Idaho Sess. Laws 308, 309, 318–22. It is apparent that the legislature inserted this requirement so that real property would not automatically be appraised at its highest and

best use. *See Fairway Development Co. v. Bannock County,* 113 Idaho 933, 750 P.2d 954 (1988) (distinguishing cases from other jurisdictions because statutes in those jurisdictions required that real property be assessed according to its highest and best use rather than its actual and functional use). Although the actual and functional use may be the highest and best use, the two phrases are not meant to be synonymous.

■ The word "actual" means: "1. existing in act or fact; real: *an actual case of treason; actual expenses; an actual hardship.* 2. existing now; present; current: *the actual position of the moon.*" WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 15 (1989 Barnes & Noble, N.Y.) (italics in original). The word "functional" means: "1. of or pertaining to a function or functions: *functional difficulties in the administration.* 2. having or serving a utilitarian purpose; capable of serving the purpose for which it was designed: *functional architecture; a chair that is functional as well as decorative.*" *Id.* at 574 (italics in original). Considering the definitions of "actual" and "functional" and the legislature's apparent purpose in adding that requirement, the actual and functional use of real property is its existing use and the use for which it was designed or intended.

The Park argues that as a matter of law the actual and functional use of rented spaces differs from the actual and functional use of unrented spaces. We disagree. What is being valued for assessment purposes is the real property, not the business being operated on the real property. The actual and functional use of the real property is as a mobile home/manufactured home park. The assessed value of the Park's real property is simply an opinion regarding the probable sale price of the real property if it were sold for use as a mobile home/manufactured home park, assuming there was a willing seller, under no compulsion to sell, and an informed, capable buyer, with a reasonable time allowed to consummate the sale and a reasonable down or full cash payment. The Park's actual vacancy rate may or may not affect that probable sale price, depending upon the cause of the vacancy rate. Both the rented

and unrented spaces are designed and intended for use as mobile home/manufactured home rental spaces. The actual and functional use of a space does not change merely because it becomes vacant or occupied.

■ We addressed a similar issue in *Riverside Development Company v. Vandenberg,* 137 Idaho 382, 48 P.3d 1271 (2002). The issue in *Riverside Development* was the value of unsold subdivision lots. The assessor determined that the actual and functional use of the unsold lots was as single-family residence lots, and the assessor valued them at their retail value, based upon the sales price of lots that had sold. The taxpayer contended that the actual and functional use of the unsold lots was as inventory and that as inventory they had a lower value. We upheld the district court's finding that the actual and functional use of the unsold lots was as single-family residential lots. Similarly, in this case the actual and functional use of the Park's unrented spaces is as mobile home/manufactured home rental spaces, not as an inventory of lower-valued unrented spaces.

The Park argues that *Greenfield Village Apartments, L.P. v. Ada County,* 130 Idaho 207, 938 P.2d 1245 (1997), and *Fairway Development Co. v. Bannock County,* 113 Idaho 933, 750 P.2d 954 (1988), support its position. In the *Greenfield Village* case, the taxpayer owned a low-income rental housing project that was subject to a restrictive covenant that bound the owner and all subsequent owners to restricted rent charges for twenty years. After considering all three appraisal methods, the assessor valued the apartment complex based upon the sales comparison approach. When doing so, he did not take into account the restrictive covenant, but used as comparable sales apartment complexes that did not have a similar restriction on rental income. This Court held that by failing to take the restrictive covenant into consideration, the assessor had ignored the property's actual and functional use. As we stated, "The 'actual and functional use' of this property is as a rent-restricted, low-income housing. It cannot be used otherwise." 130 Idaho at 210, 938 P.2d at 1248. In *Greenfield Village,* the restrictive covenant had to be taken into consideration when estimating the probable sale price (market value) of the real property because any purchaser would be bound by the rent restrictions in the covenant. Here, there is nothing similar that would limit the rent that could be charged by any future purchaser of the Park.

In the *Fairway Development* case, the issue was the valuation of a fifty-six-unit apartment complex that had been converted into condominiums. Upon the filing of the document to convert the apartments into condominiums, the assessor began assessing the units as condominiums rather than apartments, which increased their assessed value by 337%. The assessor used the sales comparison approach to value the unsold units, based upon the sales of other condominium units in the county. The taxpayer sold nine condominium units, but during the ensuing ten years did not sell any more units and continued renting the unsold units as apartments. We held that by focusing entirely upon the classification of the unsold units as condominiums rather than upon their actual use as apartments, the assessor had failed to give major consideration to the actual and functional use of the units.

> Certainly it cannot be said on this record that exclusive use of the market data approach based on sales of condominiums (when none have been sold for ten years) gives *major consideration* to the "actual and functional" use. It may not result in accurate or fair appraisals to define all other Bannock County condominiums as "similar properties" to Fairway Estates and so use the values of those properties as the basis for assessing Fairway.... Here, we hold that Fairway cannot be assessed with attention given only to its property's classification as "condominium."

113 Idaho at 937–38, 750 P.2d at 958–59 (italics in original). In the *Fairway Development* case, we did not hold that unrented apartments should be valued differently than rented apartments.

In this case, the district court did not err in finding that the actual and functional use of the vacant and the occupied rental spaces was the same. Their actual and functional

use was as mobile home/manufactured home rental spaces.

**B. Was the District Court's Decision Supported by Substantial and Competent Evidence?**

█ The Park argues that the district court's decision violates Sections 2 and 5 of Article VII of the Idaho Constitution[2] because it failed to take into account the Park's actual vacancy rate. As the Park argues, these provisions require that taxation must be proportional and uniform as among the "same class" of those to be taxed. *Fairway Development Co. v. Bannock County*, 113 Idaho 933, 750 P.2d 954 (1988). Uniformity in taxing implies equality in the burden of taxation, which cannot exist without uniformity in the mode of assessment as well as in the rate of tax. *Chastain's, Inc. v. State Tax Commission*, 72 Idaho 344, 241 P.2d 167 (1952). The Park argues that the valuation of its property was inflated because the deputy assessor used a market vacancy rate of 3% rather than the actual vacancy rates of 26% in 1999 and 32% in 2000. If that valuation is permitted to stand, the Park contends it will be required to pay more than its proportional share of taxes.

█ While the courts will not attempt to correct mere mistakes or errors of judgment on the part of the assessor, where intentional, systematic discrimination occurs, either through undervaluation or through overvaluation of one property or class of property as compared to other property in the county, the courts will grant relief. *Anderson's Red & White Store v. Kootenai County*, 70 Idaho 260, 215 P.2d 815 (1950).

"Individual irregularities and inequality in taxation will always exist. It is a process which cannot be reduced to an exact science. The law does not require exactitude, but it does require uniformity." *Id.* at 265, 215 P.2d at 818.

The Park's argument regarding Sections 2 and 5 of Article VII of the Idaho Constitution is based upon its contention that its real property was overvalued. If it was not overvalued, then there was no constitutional violation. The Park does not contend that it was taxed at a higher rate than other real property in Ada County. Whether or not the Park's property was overvalued depends upon whether or not the district court's findings of fact are supported by substantial and competent evidence. Thus, the Park's argument regarding Sections 2 and 5 of Article VII of the Idaho Constitution is, in reality, simply an argument that the district court's findings were not based upon substantial and competent evidence.

█ Both parties presented two experts who testified regarding the market value of the Park's real property. The district court found that the two witnesses called by Ada County were very credible and that the two witnesses called by the Park were not persuasive. As a result, the district court found that the Park failed to meet its burden of proving by clear and convincing evidence that the assessment of its real property was arbitrary, capricious and erroneous.

The first appraisal witness called by the Park was Mark Richey, a real estate appraiser. Mr. Richey used two methods in valuing the Park's real property. He first testified

2. Those constitutional provisions read
   § 2. **Revenue to be provided by taxation.**— The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state; also a per capita tax: provided, the legislature may exempt a limited amount of improvements upon land from taxation.
   § 5. **Taxes to be uniform—Exemptions.**— All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: provided further, that duplicate taxation of property for the same purpose during the same year, is hereby prohibited.

about how he used the cost approach to arrive at a value for the Park's real property. He valued the bare land at $50,000 per acre, estimated the cost of duplicating the improvements, and then deducted 66% of the cost of the improvements as accrued depreciation. Adding the value of the bare land to the depreciated value of the improvements, he arrived at a valuation of $1,206,000 as of January 1, 1999, and $1,200,000 as of January 1, 2000.

Mr. Richey testified that the other valuation method he used was based upon the actual and functional use of the Park's real property. In this approach, he multiplied the gross annual rent for the rented spaces by a multiplier of 5.5 to arrive at a value for the rented spaces. He then calculated a value for the unrented spaces, which he classified as surplus land. Based upon land sales, he testified that the surplus land would be valued at $50,000 per acre, but because the unrented spaces were interspersed throughout the Park and would be difficult to sell, he discounted their value to $25,000 per acre. By adding these two figures together, he valued the Senator's real property at $1,810,000 on January 1, 1999, and $1,800,000 on January 1, 2000.

On cross-examination, Mr. Richey admitted that the cost approach is not the most reliable method for valuing older properties. He also testified that the gross rent multiplier of 5.5 that he used in his calculations was the lowest within the range of gross rent multipliers derived from actual sales of mobile home parks.[3] He did not state why he chose to use the lowest gross rent multiplier from comparable sales. The use of a higher gross rent multiplier would have resulted in a higher value. He also admitted that a buyer purchasing a mobile home park does not pay a certain amount for the rented spaces and then a lower amount for the unrented spaces.

The other appraisal witness called by the Park was Paul Hyde who is a business appraiser, not a real property appraiser. He stated that this was his first formal appraisal of a mobile home facility. He testified that the income approach is the most reliable method of valuing the Park's business because that type of property is sold and purchased based upon actual income. In his opinion, the market value of the Park's business was $1,450,000 on January 1, 1999, and $1,841,000 on January 1, 2000. When valuing the Park's business, Mr. Hyde used its actual income and expenses. Mr. Richey testified, however, that when using the classic income approach to value real property, the appraiser uses market rents, market occupancy levels, and market expenses.[4] Mr. Hyde did not use either the sales comparison approach or the cost approach in arriving at his opinion.

Ada County called as an appraisal witness Jan Kochan, a commercial appraiser from the Ada County Assessor's Office, and Brad Janish, a commercial real estate appraiser. Ms. Kochan testified that she used three approaches when valuing the Park's real property. She arrived at a value of $2,049,443 using the cost approach, a value of $2,261,000, using the sales comparison approach, and a value of $2,241,883 using the income approach. After considering those approaches, she arrived at a final value of $2,241,883, giving the greatest weight to the income approach because it is income-producing property.

Mr. Janish testified that he has valued thirty to forty mobile home or manufactured home parks during his career. Although he valued the Park's real property using the

3. The gross rent multiplier for mobile home parks is derived by dividing the sale price by the annual gross rent. Based upon available sales of mobile home parks, the gross rent multipliers were 5.5, 5.56, 6.35, 6.44, and 7.77.

4. Mr. Richey testified, "I didn't do a classical income capitalization approach, which estimates all the market rents, current market occupancy levels, and market expenses on the property. Because I did a gross rent multiplier within the

sales comparison approach, which is an income—it's a valid income analysis of a mobile home park." Mr. Richey also testified that the rent multiplier approach is a good way to value mobile home parks because "it takes out the subjectiveness that can be—subjectiveness or differences from mobile home park to mobile home park based on different methods of management or upkeep or just how they account for all their expenses they incur on them."

cost approach, he stated he does not believe that approach is meaningful for thirty-year-old real property such as the Park because it is too subjective. Using that approach, however, he arrived at a value of $2,796,000. He then applied the sales comparison approach, using as comparables four other parks. He examined those sales to calculate the price per rental space, the effective gross income multiplier[5] in each of the sales, and the net operating income per space. He concluded, using the sales comparison approach, that the Park's real property had a value of $2,700,000. He then valued the property using the income approach. When doing so, he used the market vacancy rate rather than the Park's actual vacancy rate. He testified that he has never before seen a mobile home park the age of the Park with a vacancy rate as high as the Park's vacancy rate. He surveyed 3,459 spaces in the market area, and they had a vacancy rate of 5.2%. Those parks limited to residents aged 55 and older had a vacancy rate of 0.6%. He therefore used a vacancy rate of 4%. Using the income approach, he valued that real property at $2,234,000. After considering the results obtained by using all three approaches, he determined that the value of the real property as of October 2000 was $2,400,000, and that its value on January 1, 1999, and on January 1, 2000, would have been as high or higher.

■ The Park had the burden of proving by clear and convincing evidence that it is entitled to the relief claimed. *Roeder Holdings, L.L.C. v. Board of Equalization of Ada County*, 136 Idaho 809, 41 P.3d 237 (2001). The assessed value of $1,938,500 for the Park's real property is presumed correct. The district court did not find the testimony of either Mr. Richey or Mr. Hyde to be persuasive, and it found credible the testimony of Ms. Kochan and Mr. Janish. It is the province of the trial court to weigh conflict-

ing evidence and to judge the credibility of witnesses. *King v. King*, 137 Idaho 438, 50 P.3d 453 (2002). Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Id.* The district court concluded that the Park had failed to sustain its burden of proof. The district court's finding in this regard is supported by substantial and competent evidence.

■ The dissent raises as an issue on appeal that the Park should have been assessed as an over-age-fifty-five mobile home park. The dissent argues, "The Senator's over fifty-five age restriction ... has significant impact on the market value of its real property. By ignoring The Senator's age restriction, the assessor failed to give major consideration to actual and functional use." The age restriction would be material if it impacted the fair market value of the Park's real property. Neither party contended that it did, however. Although we can speculate as to the age restriction's impact upon the fair market value of the real property, neither party's experts opined that the value was increased or decreased by that age restriction,[6] nor did either party contend that the age restriction should have been considered when valuing the real property. Because neither party raised that issue, we did not address it on appeal.

**C. Did the County Assessor Improperly Include Business Goodwill in Valuing the Park's Real Property?**

Idaho Code § 63–602L provides that goodwill is among the tangible personal property that is exempt from taxation. The Park's witness Mr. Richey testified that the difference between the $1,200,000 value he obtained using the cost approach and the

---

**5.** Mr. Janish testified that "effective gross income multiplier" is determined by dividing the sales price of a property with the effective gross income being generated by the property at the time of the sale. He stated that an effective gross income multiplier differs from a gross income multiplier in that the latter utilizes gross potential income.

**6.** The only evidence regarding the age restriction was from Mr. Janish, who was called by Ada County as an expert witness. He testified that in the relevant market area, the vacancy rate for mobile home parks restricted to persons over age fifty-five was about one-ninth the vacancy rate for mobile home parks in general. Such evidence may indicate that the age restriction increases the fair market value of a mobile home park's real property.

$1,800,000 value he obtained using the gross rent multiplier was goodwill. Mr. Hyde testified that the difference between his valuation of the business and Mr. Richey's value of the tangible assets using the cost approach was goodwill. Ms. Kochan and Mr. Janish both testified that they did not include goodwill in their valuations of the real property. Based upon the testimony of Messrs. Richey and Hyde, the Park contends that the assessor's valuation of the real property included goodwill. That argument is based upon the testimony of Mr. Richey that the value of the tangible assets was only $1,200,000. The district court did not find Mr. Richey's testimony to be persuasive. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *King v. King,* 137 Idaho 438, 50 P.3d 453 (2002). The district court found that the Park had failed to prove that the assessments for 1999 and 2000 included business goodwill. That finding is supported by substantial and competent evidence.

## IV. CONCLUSION

The judgment of the district court is affirmed. Costs on appeal are awarded to Ada County.

Justices SCHROEDER, WALTERS, and Justice Pro Tem. HOHNHORST, concur.

Justice KIDWELL, dissenting as to the analysis of part III A.

The Ada County assessor failed to give major consideration to the actual and functional use of The Senator's real property when assigning a market value for tax assessment purposes. Therefore, I respectfully dissent.

## ANALYSIS

Real property in Idaho is subject to a tax based on its market value. Idaho Code § 63–205 (2002). Market value refers to the amount of money a willing buyer would pay a willing seller for the real property in a voluntary transaction. I.C. § 63–201(10). Market value is determined by the requirements of Title 63 of the Idaho Code and by the rules promulgated by the Idaho Tax Commission

(Commission). This, of course, includes the requirement that an assessor give major consideration to the "actual and functional use" of the real property when assigning a market value. I.C. § 63–208.

There seems to be confusion over the meaning of the phrase "actual and functional use" as used in I.C. § 63–208. If a statute is clear, this Court need not engage in an exercise of statutory construction. *Hamilton ex rel. Hamilton v. Reeder Flying Serv.,* 135 Idaho 568, 572, 21 P.3d 890, 894 (2001). The statute will be given its plain meaning. *Canal/Norcrest/Columbus Action Comm. v. City of Boise,* 136 Idaho 666, 670, 39 P.3d 606, 610 (2001).

The Senator is a manufactured home park that rents spaces to tenants fifty-five (55) years of age or older. The Senator is a "limited use" mobile home park. The Senator is not a general use mobile home park, as the assessor determined. The majority correctly states, "what is being valued for assessment purposes is real property, not the business being operated on the real property." However, when giving major consideration to the actual and functional use of real property in order to determine its market value, the assessor cannot ignore the realities of a business operating on the property. A willing buyer and seller would undoubtedly take into consideration the limited use of The Senator in identifying the real property's market value. Broadly categorizing any mobile/manufactured home park as a general mobile home park is akin to broadly categorizing both a full service Albertson's and a small corner grocer as "grocery stores" for purposes of assessing the market value of the real property on which they operate. In order to give major consideration to the actual and functional use of real property, an assessor must consider the nature of the business operating on the real property.

Three cases cited by the majority support this position. In *Riverside Dev. Co. v. Vandenberg,* this Court upheld the assessor's determination that the actual and functional use of unsold lots in a subdivision were as single-family residence lots, not inventory, as the taxpayer had argued. 137 Idaho 382, 384, 48 P.3d 1271, 1274 (2002). This determination

led to a greater market value, and consequently, a higher tax assessment of the property. *Id.* In *Greenfield Vill. Apartments, L.P. v. Ada County,* the assessor mistakenly applied the sales comparison method, a market valuation method where one property's market value is based on the sale price of a similar property, when assigning a market value to the taxpayer's apartment complex because the apartment complex was subject to a restrictive covenant binding the owner to lowered rent charges for twenty years. 130 Idaho 207, 210, 938 P.2d 1245, 1248 (1997). This Court determined the assessor ignored the actual and functional use of the apartment complex as low income housing in estimating its market value. *Id.* In *Fairway Dev. Co. v. Bannock County,* a fifty-six-unit apartment complex was converted to condominiums, resulting in a three-fold increase in the property's assessed value even though forty-seven of the units remained unsold and were rented as apartments. 113 Idaho 933, 935, 750 P.2d 954, 956 (1988). In estimating the market value, this Court found the assessor failed to consider the actual and functional use of the property as an apartment complex rather than as condominiums. *Id.* at 936, 750 P.2d at 957.

In these three cases, the *nature of the business* operating on the real property was a major consideration in determining the actual and functional use of the property, and consequently, the correct market value for assessment purposes. The Senator's over fifty-five age restriction, a socially acceptable and beneficial classification, has significant impact on the market value of its real property. By ignoring The Senator's age restriction, the assessor failed to give major consideration to actual and functional use.

In addition to the requirements of Title 63, as discussed above, in determining a real property's market value, an assessor must also take into account the rules promulgated by the Commission. However, a search of the Commission's rules reveals no guidance on how an assessor should give major consideration to the actual and functional use of real property when assigning a market value. The Commission improperly leaves such determinations to the unfettered discretion of the assessor. It is necessary for the Commission to promulgate rules that provide guidance to assessors on how to give major consideration to the actual and functional use of real property when assigning a market value.

The majority finds there is substantial, competent evidence supporting The Senator's assessed value. The majority dismisses the dissent by stating the issue of the age restriction was not raised by either party and that the impact of the age restriction on the fair market value would be speculative. In doing so, the majority misses the point of the dissent. There is no question that fair market value of The Senator, as assessed by the county, is supported by substantial, competent evidence. However, this does not change the fact that assessors act without the benefit of guidance from the Commission in making their decisions. There is absolutely no doubt that a willing buyer and seller, in a voluntary transaction, would seriously consider The Senator's occupancy rate in determining its fair market value. The standard occupancy rate for general use manufactured home park, or even an age-restricted park, should not control the assessor's decision. The Commission should promulgate regulations instructing assessors on how to give major consideration to the actual and functional use of the property they are assessing rather than allowing assessors to use their unfettered discretion in determining the value of real property, such as The Senator's, based on inapplicable occupancy rates.

For these reasons, I would remand this case to reconsider The Senator's assessed tax based on its actual and functional use.