109 P.3d 170

**IDAHO POWER COMPANY,**
Petitioner–Appellant,

v.

**IDAHO STATE TAX COMMISSION,**
Respondent.

No. 29615.

Supreme Court of Idaho,
Boise, December 2004 Term.

March 3, 2005.

Blackburn & Jones, LLP, Boise, for petitioner-appellant. Bruce C. Jones argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Lawrence G. Allen argued.

SCHROEDER, Chief Justice.

Idaho Power Company (Idaho Power) claims that the Idaho State Tax Commission's (Tax Commission) year 2000 appraisal of its operating property included values of certain regulatory assets that are not properly taxable. The Tax Commission denied the exclusions Idaho Power requested. Idaho Power filed a petition for judicial review with the district court which conducted a trial and affirmed the decision of the Tax Commission. Idaho Power appeals the decision of the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Idaho Power is a public utility company under Idaho Code §§ 63–201(16) and 61–129 which owns operating property subject to Idaho property taxes. Pursuant to I.C. § 63–401, the Tax Commission annually assesses all of Idaho Power's operating property in the state. Operating property is assessed at its market value on the first day of each tax year. "Operating property" is defined in I.C. § 63–201(11) and includes the equipment, power stations, power sites, lands, generating plants, transmission lines, distribution lines, and other property that is used to generate, transmit, and distribute the electricity that is sold to its customers.

The Tax Commission appraised Idaho Power's operating property using the unit method of appraisal, whereby the operating property is viewed as an integrated system and valued in its entirety, rather than appraising individual components of the system. In accordance with the unit method the Tax Commission appraised the operating property by 1) determining values under both a cost and income approach to valuation; 2) averaging the two values to arrive at a unit value; 3) allocating a portion of that value to Idaho Power's operating property in the state of Idaho (Idaho value); and 4) deducting the value of non-taxable assets from the Idaho value to arrive at a final Idaho value.

The cost approach is conducted by (a) determining the historical cost (original cost of the property when it was first placed into utility service) of the operating property; (b) deducting accrued depreciation; and (c) adding certain intangibles. Under the income approach, the value of the property is determined by examining its ability to generate income. The value of the property is equal to the present worth of the future net operating income. The future net operating income is converted to its present worth by a capitalization rate. "Net operating income" means the operating revenue of Idaho Power, derived from its sale of electricity to its customers, less operating, maintenance, depreciation, taxes, and amortization expenses.

After the Tax Commission determines the values of Idaho Power's operating property under both the cost and income approaches, the values are reconciled with equal weight given to each approach to arrive at a total unit value (an "average" of the cost approach and the income approach values). A portion of the total unit value is allocated to the state of Idaho based on the percentage of Idaho Power's operating property located in Idaho. This value is called the Idaho value. Exempt property is then deducted from the Idaho value to arrive at a final Idaho value. The value of the exempt property is determined using the market-to-book ratio. This ratio is used to adjust exempt property reported at historical cost to market value. The market-to-book ratio is the unit value divided by the cost value. It is this adjusted value of ex-

empt property that is then deducted from the Idaho value to arrive at the final Idaho value.

At issue in this case is the Tax Commission's appraisal of Idaho Power's operating property for the 2000 tax year. Under the cost approach the Tax Commission determined the value of Idaho Power's operating property to be $1,786,613,467. Under the income approach, the value determined by the Tax Commission was $1,371,727,749. After reconciling these values, the unit value of Idaho Power's operating property was $1,579,170,000. The Tax Commission determined that 64.258671% of this value, or $1,014,753,650 should be allocated to Idaho as the Idaho value of Idaho Power's operating property. The adjusted values of exempt property (licensed vehicles, pollution control and franchises, rights-of-way, custom software, and certain pensions) were then deducted from the Idaho value to arrive at a final Idaho value of $956,960,711.

On July 31, 2000, Idaho Power petitioned the Tax Commission for a reduction of the appraised value of its operating property, alleging that the valuation improperly included values for business inventory and relicensing costs, as well as values for non-taxable "regulatory assets," specifically, Demand Side Management conservation programs, post-retirement benefits and the American Falls bond refinancing costs. The Tax Commission denied the requested exclusions for business inventory and the regulatory assets, but granted the requested exclusion for relicensing costs, reducing the final Idaho value of Idaho Power's operating property from $956,960,711 to $939,843,684.

Idaho Power filed a Petition for Judicial Review with the district court, arguing that the Tax Commission's appraisal improperly included values for business inventory and regulatory assets. The parties stipulated to a dismissal of the business inventory claim, leaving only the regulatory assets claim before the court. The Tax Commission moved for summary judgment. The parties submitted stipulated facts to the district court. Idaho Power filed a cross-motion for summary judgment.

The district court issued a memorandum opinion noting that Idaho Power did not dis-

pute the methodology employed by the Tax Commission in its appraisal, nor did it dispute the value the Tax Commission arrived at for Idaho Power's operating property under the income approach. Idaho Power only contested the value of the operating property under the cost approach, arguing that the value of the regulatory assets needed to be added into the cost approach value, since the income approach and the cost approach are weighted equally and are designed to reflect the same values, and the income approach necessarily captured income from the regulatory assets. In other words, since the income approach included values from the regulatory assets, the cost of the regulatory assets needed to be added to the cost approach, and then the depreciated cost of the regulatory assets could be deducted from the Idaho value for a final taxable value of $920,564,436, or $19,279,248 less than the Tax Commission's final Idaho value of $939,843,684.

The IPUC permits Idaho Power to charge rates for its services based upon its operating costs and the costs of its property and authorized deferred expenses, with the value of its property and authorized deferred expenses adjusted for accumulated depreciation. For accounting purposes Idaho Power's authorized deferred expenses are recorded on its balance sheet as "regulatory assets." The parties have stipulated that regulatory assets are not property, but the IPUC allows Idaho Power to record them on its balance sheet in order that they may be recovered through the rates Idaho Power charges its customers.

A regulatory asset is an accounting convention that enables Idaho Power to defer an otherwise current expense. A regulatory asset must by authorized by the IPUC. The purpose of the deferral of a current expense is to regularize electricity rates. Spreading out a current expense over a period of years protects against the fluctuation that would occur in the rates charged for electricity if Idaho Power were forced to recognize a large expense and attempt to recover that expense in a short period of time. The IPUC examines the authorized deferred expenses, or regulatory assets, in rate proceedings and

determines whether Idaho Power may recover the expenses through the rates it charges for electricity. The regulatory assets are amortized annually and remain on Idaho Power's balance sheet at the unamortized amount until the asset has been completely amortized as an expense.

The three regulatory assets at issue in this case are: 1) Demand Side Management (DSM) programs in which Idaho Power provided financing to customers to encourage the use of energy conservation measures (DSM programs); 2) post-retirement benefits for which Idaho Power changed from a cash method to an accrual method of accounting (post-retirement benefits); and 3) expenses incurred in connection with refinancing bonds issued for the purpose of reconstructing, rehabilitating, replacing and improving the American Falls Dam (American Falls Dam refinancing costs).

In addition to recovery of the expenses associated with each of these regulatory assets, the IPUC authorized a rate structure that includes a rate of return or carrying charge on the deferred amount. With respect to the DSM program costs, the IPUC authorized rates that were designed to yield a return approximating "current market interest rates" on the deferred amount. Thus, the rates were designed to produce a stream of income flowing to Idaho Power in excess of the actual costs incurred by it for the DSM programs. The purpose of the return is to neutralize the penalty effectively imposed from having to amortize rather than expense these costs (i.e., the time value of money). With respect to the post-retirement benefits and the American Falls Dam refinancing costs, the IPUC included the unamortized deferred amounts of these regulatory assets in the rate base which enabled Idaho Power to receive a rate of return on these amounts, similar to other items included in the rate base.

The district court determined that there was a genuine issue of material fact as to whether the regulatory assets were included in the 2000 tax year appraisal of Idaho Power's operating property. The district court could not determine as a matter of law that the income approach to valuation did *not*

include value from the regulatory assets. In examining the DSM programs and American Falls Dam refinancing specifically, the district court noted that, "the approved rate structure results in a stream of income in excess of the actual costs incurred" for these regulatory assets, which seemed to suggest that they generated income. Conversely, the district court found that the testimony of Patrick Bertsch (Bertsch), the senior appraiser for the Tax Commission who appraised Idaho Power's operating property, directly refuted the inference that regulatory assets generate income and that such income was included in the income approach to valuation.

The district court determined that the regulatory assets are not property and, therefore, cannot be taxed. The district court focused on the fact that the IPUC allows Idaho Power to charge higher rates in order to offset any expenses incurred by Idaho Power from having to amortize rather than expense the regulatory assets. Idaho Power's net operating income is derived from the sale of electricity to its customers. Thus, because the net operating income figure used in the income approach to valuation is impacted by the rates Idaho Power is permitted to charge for electricity, the district court stated that, "there is more than a scintilla of evidence to support Idaho Power's contention that the income approach reflected a value for the income stream designed to offset the effect of the requirement that the regulatory assets be amortized rather than expensed."

The Tax Commission filed a renewed motion for summary judgment. The district court rephrased the issue before it as "whether a proper valuation of the operating property by means of the income approach should account for any increase in net operating income which is attributable to the regulatory assets." The district court determined there still existed a genuine issue of material fact as to whether the income approach reflected any revenue generated by the regulatory assets and denied the renewed motion for summary judgment.

Following trial, the district court issued findings of fact and conclusions of law determining that Idaho Power had failed to pres-

ent any evidence that the Tax Commission's appraisal exceeded the actual value of the operating property. The court held that, "[w]hile the regulatory assets affect the rates which Idaho Power is permitted to charge its customers, they do not in themselves generate income." The court noted that Idaho Power failed to present evidence quantifying the effect of the regulatory assets on net operating income, while the Tax Commission presented evidence that the inclusion of the regulatory assets in rate base had a *de minimis* impact, if any, on net operating income. The district court relied heavily on John Gale's (Gale) testimony, an expert for Idaho Power, who testified that the effect of regulatory assets on net operating income could only be estimated and not measured with certainty. The district court interpreted this testimony as indicating that it was unclear whether regulatory assets affected net operating income positively or negatively, if at all.

The district court found that the appraisal method employed by the Tax Commission was fair and reasonable, as was the valuation determined by the Tax Commission. Therefore, the district court held that Idaho Power failed to carry its burden of demonstrating that the appraisal was "arbitrary, capricious and erroneous" and "resulting in discrimination" against it. The district court denied the petition for judicial review and affirmed the decision of the Tax Commission. This appeal followed.

## II.

## STANDARD OF REVIEW AND BURDEN OF PROOF

■ Idaho Rule of Civil Procedure (I.R.C.P.) 84(e)(1) sets forth the method the district court uses to review agency action. That rule states that:

> When judicial review is authorized by statute, and statute or law does not provide the procedure or standard, judicial review of agency action shall be based upon the record created before the agency.... *When the statute provides that review is de novo, the appeal shall be tried in the district court on any and all issues, on a new record.* (emphasis added).

I.R.C.P. 84(e)(1)(2004). Idaho Power filed its Petition for Judicial Review of the Tax Commission's appraisal of its operating property pursuant to Idaho Code § 63-409, which is entitled "Appeals from state tax commission valuations of operating property." Subsection (1) of that statute provides that, "[t]he appeal may be based upon any issue presented by the taxpayer to the state tax commission and shall be heard by the district court in a trial de novo without a jury in the same manner as though it were an original proceeding in that court." I.C. § 63-409(2004). Therefore, the district court in this case properly conducted a trial do novo, without a jury, on Idaho Power's appeal of the Tax Commission's appraisal of its operating property.

■ In most petitions for judicial review of agency action, the district court does not conduct a trial de novo, and instead bases its determination on the record as created before the agency. *See* I.R.C.P. 84(e)(1). Where the proceeding in the district court is not a trial de novo, and a party appeals the district court's decision to this Court, this Court reviews the record independently of the district court's decision. *See, e.g., Allen v. Blaine County,* 131 Idaho 138, 140–41, 953 P.2d 578, 580–81 (1998) (treating board of county commissioners as an agency, and reviewing agency record independently of the district court's appellate decision); *Willig v. State Dep't of Health & Welfare,* 127 Idaho 259, 261, 899 P.2d 969, 971 (1995) (reviewing agency record created before the Idaho Department of Health and Welfare independently of district court's appellate decision); *Boise Group Homes, Inc. v. Idaho Dep't of Health & Welfare,* 123 Idaho 908, 909, 854 P.2d 251, 252 (1993). In other words, this Court would not give deference to the district court's decision. However, as indicated by I.R.C.P. 84(e)(1) and I.C. § 63-409(1), above, this standard of review is not appropriate where the district court conducts a trial de novo in an appeal of the Tax Commission's valuation of operating property. Nor is it appropriate in an appeal from the board of tax appeals. *See* I.C. § 63-3812(c) ("Appeals [from the board of tax appeals] may be based upon any issue presented by the appellant to the board of tax appeals and shall be heard and determined by the court without a jury

in a trial de novo on the issues in the same manner as though it were an original proceeding in that court.").

■ The proper standard of review in this case requires that this Court defer to the district court's findings of fact that are supported by substantial evidence. "A trial court's findings of fact will be upheld on appeal if the findings are supported by substantial and competent evidence. It is the province of the trial judge to weigh the conflicting evidence and testimony and to judge the credibility of witnesses." *The Senator, Inc. v. Ada County Bd. of Equalization,* 138 Idaho 566, 569, 67 P.3d 45, 48 (2003). This Court exercises free review over the district court's conclusions of law. *Id.*

■ An assessor's valuation is presumed correct, and a taxpayer must show by clear and convincing evidence that he or she is entitled to the relief requested. *Id.*

### III.

### THE DISTRICT COURT'S FINDING OF FACT THAT REGULATORY ASSETS DO NOT GENERATE INCOME IS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD

■ Both parties agree that the regulatory assets affected the rates that IPUC allowed Idaho Power to charge for its electricity. Both parties agree that the IPUC in setting Idaho Power's rates authorized a rate of return on the American Falls bond refinancing costs and post-retirement benefits costs, and a carrying charge on the DSM programs. Both parties agree that the rates that the IPUC permits Idaho Power to charge for its electricity effect Idaho Power's net operating income. Idaho Power asserts that the fact that its rates include rates of return for the American Falls bond, refinancing costs, post-retirement benefits costs and a carrying charge for the DSM programs proves that the regulatory assets generate income. The Tax Commission, on the other hand, argues that even though the IPUC authorized rates of return and carrying charges on the regulatory assets at issue in

this appeal, the regulatory assets themselves do not generate income.

The district court, in its findings of fact, stated that, "[w]hile the regulatory assets affect the rates which Idaho Power is permitted to charge its customers, they do not in themselves generate income." The district court struggled with Idaho Power's argument that the regulatory assets produced income since Idaho Power failed to produce any proof as to the amount by which the income approach was inflated due to the inclusion of any income generated by the regulatory assets. Without some attempt by Idaho Power to estimate the income generated by the regulatory assets, the district court was unable to conclude that the appraisal included a value for the regulatory assets and that it did not represent a reasonable value of Idaho Power's operating property. The difficulty the district court had in deciding in Idaho Power's favor was compounded by the fact that Idaho Power did not dispute the use of the income approach to valuation, nor did it dispute the value the Tax Commission determined for Idaho Power's operating property under that approach. Thus, the district court was left with an appraisal methodology and a valuation under that methodology that the parties agreed was fair, and no evidence of the amount of that appraisal (if any) that represented a value of an asset that was not properly taxable.

Idaho Power's argument in this case focuses on the relationship between the IPUC rate-making and net operating income. Idaho Power asserts that the fact that rates of return and carrying charges are allowed on the regulatory assets is proof that they generate income. The district court's examination of this argument is instructive:

> The central premise in Idaho Power's argument is that the use of net operating income in the income approach necessarily captures and reflects income from the regulatory assets. Stated another way, Idaho Power's position is that its net operating income reflects earnings by reason of receipt of revenues in excess of the actual expenses of regulatory assets. The implicit premise, and the premise that this Court is unable to find to be founded in the

evidence, is that the use of the $131,000,000 figure in the income approach to the 2000 appraisal included any sum generated by, or attributable to, the regulatory assets.

> Idaho Power has not attempted to quantify the effect of the carrying charge that the IPUC authorized for DSM programs on net operating income. The Tax Commission presented evidence at trial, which this Court finds to be credible, that the carrying charge for DSM programs had a *de minimis* impact, if any, on Idaho Power's net operating income. Similarly, Idaho Power has not attempted to quantify the effect on its net operating income resulting from inclusion of the post-retirement benefits and refinancing costs in rate base. The evidence presented at trial by the Tax Commission demonstrates that the inclusion of these regulatory assets in rate base had a *de minimis* impact, if any, on Idaho Power's net operating income.

> In finding that Idaho Power failed to demonstrate that the inclusion of the regulatory assets in rate base produced net operating income, the Court has placed substantial weight on the testimony of Mr. Gale. His explanation of the reason that the impact of the regulatory assets on net operating income could only be estimated, rather than identified with precision, served to explain to the Court the reason that one cannot necessarily conclude that inclusion of the regulatory assets in rate base had a bottom line effect on net operating income: IPUC's rate-making decisions are based upon *projections*. In contrast, Idaho Power's operating income reflects actual sales and expenses. A number of factors—including weather and load charges—determine whether IPUC's projections turn out to be accurate. Whether the minimal potential effect of inclusion of the regulatory assets was actually realized in net operating income was determined by external variables rather than the rates authorized by IPUC. In view of this testimony, this Court is only able to conclude that the regulatory assets *may have* positively affected Idaho Power's net operating income. To reach the conclusion that the

regulatory assets *actually* increased Idaho Power's net operating income beyond the recovery of operating expenses and the rate of return otherwise authorized by IPUC for other equity and debt components contained in rate base requires speculation unwarranted by the record before this Court.

The district court denied summary judgment twice based on its finding that there was a genuine issue of material fact as to whether or not the regulatory assets generated income that was included in the income approach to valuation. It was only after a trial and the presentation of both parties' expert witnesses' testimony that the district court reached its conclusion that the regulatory assets did not generate income. Substantial, competent evidence in the record supports this conclusion.

On direct examination, Ms. Bayse, property tax manager for Idaho Power, testified that regulatory assets generate income because they earn rates of return that are included in the net operating income of Idaho Power.

> Q. Can you explain to the court how a regulatory asset generates income.
>
> A. A regulatory asset generates income no differently than any other investment that Idaho Power has. Through the regulatory process, when the assets are included in rate base, they earn a return on the investment and that return is included in the rates the company is allowed to charge for electricity and then that—those—that income then flows to the financial statements of Idaho Power Company.

Bayse's testimony demonstrates that Idaho Power's argument that the regulatory assets generate income relies on the premise that because a rate of return is allowed on the regulatory assets, the regulatory assets generate income. This argument is refuted by the Tax Commission's expert testimony that just because an asset earns a rate of return set by the IPUC does not mean that that asset is generating income. It is the operating property of Idaho Power that generates income. As the parties stated in their Stipulated Facts, a regulatory asset is an accounting convention designed to enable Idaho Power to defer an otherwise current expense. A regulatory asset is not property, and in order for a regulatory asset to be created, it must be authorized by the IPUC. Thus, the treatment of regulatory assets (i.e., whether or not rates of return or carrying charges are allowed on them) is subject to the discretion of the IPUC.

Dr. Reading testified on behalf of the Tax Commission in direct examination that "what generates income for a utility is the production of electricity through production plant, transmission, those kinds of things." Reading also testified as to the unpredictability of the effect regulatory assets may have on net operating income when he stated that, "[s]o depending on the treatment of regulatory assets, rates and, hence, revenues can either be higher or lower." Mr. Goodwin testified on behalf of the Tax Commission about the rate of return allowed on the regulatory assets, and how a return on an asset can be distinguished from property that actually generates income:

> Q. Can something that's not property generate income?
>
> A. It cannot. It's inconceivable that if something generated income, that it wouldn't be property, or, conversely, that property is the only thing that can actually create income. . . . If something has the ability to create income, then it is property. It's a right that I would have to earn money on that investment. It's a rate of return I would receive, in other words.
>
> Q. But doesn't the Idaho Public Utilities Commission allow a rate of return on the the three regulatory assets at issue?
>
> A. Yes, they do.
>
> Q. So wouldn't that be earning income?
>
> A. In a regulatory context, certainly that's factored into the process and it's clear it's factored into the creation of the allowed rate. When someone is actually paying it for a kilowatt hour of electricity. There is a little piece of that that does contain elements of the effect of the regulatory assets. But that does not mean that it necessarily is the generation or the source of the income, if you will.

Without selling any power, without creating any electricity and then selling it to a customer, you couldn't even make that increment that's attributable in the regulatory process to the DSM and to the other regulatory assets.

In other words, you have to be in the business and in the process, the physical process of creating and selling power in order to generate the money based on rates that are permitted by the PUC.

Later in his testimony, Goodwin again emphasized the fact that it is the operating property, not regulatory assets, that generates income when he stated, "[regulatory assets] certainly affect the amount of money which utilities can charge their ratepayers, but they themselves don't actually create the flow of money. It's the generation of electricity and the sale of it that literally does that." Goodwin prepared a demonstrative exhibit that illustrates the impact of regulatory assets in the rate-making process, but emphasizing that it is the operating property that actually generates income.

Regulatory assets are considered in and impact the rate-making process. But the rates set by the IPUC do not result in income flowing to Idaho Power without some good, i.e., electricity, produced by the operating property to which the rate may be attached. Operating property can generate income without regulatory assets, but regulatory assets cannot generate income without operating property. Substantial evidence in the record supports the district court's determination that the regulatory assets do not generate income.

## IV.

### THE TAX COMMISSION'S APPRAISAL OF IDAHO POWER'S OPERATING PROPERTY WAS NOT EXCESSIVE OR ARBITRARY, CAPRICIOUS AND ERRONEOUS RESULTING IN DISCRIMINATION AGAINST THE TAXPAYER

■ An assessor's appraisal of property is presumed correct, but " 'the court will grant relief where the valuation fixed by the assessor is manifestly excessive, fraudulent or op-

pressive; or arbitrary, capricious and erroneous resulting in discrimination against the taxpayer.' " *Merris v. Ada County,* 100 Idaho 59, 64, 593 P.2d 394, 399 (1979) (quoting *Appeal of Sears, Roebuck & Co.,* 74 Idaho 39, 46, 256 P.2d 526, 530 (1953)). Idaho Power did not challenge the appraisal on the grounds that it was manifestly excessive, or fraudulent or oppressive. Thus, the issue before the Court is whether the appraisal was "arbitrary, capricious and erroneous resulting in discrimination against the taxpayer." *Id.*

■ *Merris* defined what is meant by an arbitrary appraisal. "An arbitrary valuation is one that does not reflect the fair market value or full cash value of the property." *Id.* at 63, 593 P.2d at 398. The district court noted that Idaho Power failed to present evidence that the appraised value of the property was erroneous. Idaho Power did not argue that the total value was erroneous but focused on the fact that it may have included values for non-taxable assets. Idaho Power never quantified the impact of the regulatory assets on the net operating income, nor did it demonstrate that the Tax Commission's appraisal resulted in discrimination against it. The parties agreed that the methodology of the income approach to valuation is proper, and that the value of Idaho Power's property under the income approach was correct. The district court made the factual determination that the regulatory assets do not generate income. This factual determination is dispositive of the legal issue of whether or not the appraisal was arbitrary, capricious, and erroneous resulting in discrimination against Idaho Power. The district court's determination that the appraisal was a fair and reasonable valuation of Idaho Power's operating property is affirmed.

## V.

### THE COURT NEED NOT ADDRESS THE PARTIES' REMAINING ARGUMENTS

This Court need not address the propriety of Idaho Power's proposed method of remov-

ing the value of the regulatory assets from the appraisal and need not accept or reject a Tax Commission proposed bright-line test regarding the impact of non-taxable intangibles on taxable property.

## VI.

## CONCLUSION

The decision of the district court is affirmed. The Tax Commission is awarded costs.

Justices TROUT, KIDWELL, EISMANN, and BURDICK concur.