# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48418

SHOSHONE COUNTY, a political
subdivision of the State of Idaho acting
through the SHOSHONE COUNTY BOARD
OF EQUALIZATION, and the SHOSHONE
COUNTY ASSESSOR,

    Petitioners-Appellants,

v.

S&W OPS LLC; POWDER, LLC;
H2O, LLC; GOLF, LLC;
APARTMENT, LLC; F&B, LLC; and
VILLAGE MANAGEMENT, LLC,

    Respondents-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2022 Term

Opinion Filed: June 30, 2022

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Shoshone County. Richard S. Christensen, District Judge.

The decision of the district court is reversed; the judgment is vacated; and the case is remanded.

Hawley, Troxell Ennis & Hawley, LLP, Boise, attorneys for Appellants. Richard G. Smith argued.

Smith + Malek, PLLC, Coeur d'Alene, attorneys for Respondents. Peter J. Smith IV argued.

_____

BEVAN, Chief Justice.

This is a property tax appeal brought by a county. In 2017, Appellant Shoshone County ("the County") assessed properties owned by Respondents S&W OPS, LLC; POWDER, LLC; H2O, LLC; GOLF, LLC; APARTMENT, LLC; F&B, LLC; and VILLAGE MANAGEMENT, LLC (collectively "Taxpayers"). Taxpayers disputed the valuation and sought review by the Board of Equalization, and subsequently the Board of Tax Appeals ("BTA"). The BTA reduced the assessed value, and the County appealed to the district court. After a four-day bench trial in a de

1

novo proceeding, the district court upheld the BTA decision. The district court determined that the County's appraisal evidence was more credible than Taxpayers' evidence; however, the district court ultimately held the County had not satisfied its burden of showing how the BTA decision was erroneous by a preponderance of the evidence. The County now appeals to this Court, arguing that the district court applied the wrong standard of review by requiring the County to prove "how or why" the BTA decision was erroneous instead of simply concluding that the market value of the property was different than what was found by the BTA. We agree with the County's position. The district court's decision is reversed, the judgment is vacated, and the case is remanded with instructions for the district court to consider whether the BTA's decision on valuation was erroneous given the evidence submitted during the de novo trial. If that decision on valuation was erroneous, the district court, as the fact-finder, must set the valuation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The subject property at issue is collectively known as the Silver Mountain Resort in Kellogg, Idaho. Multiple properties combine to comprise the resort: Silver Mountain Ski Resort; Silver Rapids Indoor Water Park; Galena Ridge Golf Course and undeveloped excess land; Shoshone House Apartments; Vacant Land with Site Improvements; Morningstar Lodge Commercial Condominium Unit 10; Two Utility Condominium Units in Morningstar Lodge; and a Commercial Lot on Wildcat Way.

Jeld-Wen Holdings, Inc., listed Silver Mountain for sale in 2009, and the property remained on the market for about six years. Purchase offers between $8 million and $10 million were rejected in the beginning as they were considered too low. Later, higher offers were accepted, but they fell through for various reasons.

Tryg Fortun set up several limited liability companies, referred to collectively as Taxpayers, to own and operate the properties that are the subject of this appeal. In early 2016, Taxpayers offered $8,200,000 to purchase Silver Mountain. Jeld-Wen countered at $8,750,000 and Taxpayers accepted. Following due diligence, Taxpayers reduced their offer to $5 million. The reduced offer resulted from Taxpayers' discovery there was a great deal of deferred maintenance across the resort. Around $27,000,000 to $30,000,000 in future repairs or replacements was estimated for the ski area alone, and this estimate did not account for deferred maintenance associated with many of the subject buildings.

2

On January 1, 2017, the properties were assessed by the Shoshone County Assessor, who reached an approximate valuation of $23,700,000. Taxpayers protested, contending the total value of the property was about $5,650,000. The Shoshone County Board of Equalization upheld the Shoshone County Assessor's values, and Taxpayers appealed to the Idaho Board of Tax Appeals ("BTA").

Following a hearing, the BTA issued a final decision and order reducing the aggregate value of the properties to $6,310,000. At the outset of its decision, the BTA provided an extensive summary of the evidence and testimony elicited by each party. There are three generally accepted methods for determining market value: the cost approach, the income approach, and the sales comparison approach. *Merris v. Ada Cnty*, 100 Idaho 59, 63, 593 P.2d 394, 398 (1979). The BTA acknowledged that both parties developed value opinions using these approved methods, though the parties' respective valuations were widely divergent, with Taxpayers asking the assessed value to be reduced to $5,647,000 and the County valuing the property at $14,971,000. Examining the evidence, the BTA found the income approach, in most instances, provided the better evidence of market value for the property. The BTA also found supportive evidence to afford the $5,000,000 purchase price some credence in its decision-making, given that the resort was on the market roughly six years and had considerable future replacement costs and deferred maintenance that had not been done. The BTA then reduced the aggregate value of the collective properties to $6,310,000, affirming parts of the Board of Equalization's conclusions while modifying or reducing others. The BTA assigned each component part of the resort its own valuation without further explanation for how each individual valuation was reached:

1. Silver Mountain Ski Resort: $1,980,000;

2. Silver Rapids Indoor Water Park: $2,125,000, with the LLC receiving the sole $100,000 personal property exemption;[1]

3. Galena Golf Course and Excess Land: $1,035,000;

---

[1] Before the BTA, the parties disputed personal property exemptions claimed by Taxpayers under Idaho Code section 63-602KK. The County argued Taxpayers were limited to just one $100,000 exemption because the LLCs were part of a common horizontal enterprise. Taxpayers argued each entity could operate independently of one another and therefore each was entitled to a $100,000 exemption. The BTA concluded that while Taxpayers asserted the entities could run independently, they were currently operating as a common enterprise. This common use was a key factor of the BTA's consideration and ultimately led to its determination that Taxpayers were only entitled to the benefit of a single $100,000 personal property exemption. This portion of the BTA decision was not appealed to the district court.

3

4. Shoshone House Apartments: $850,000;

5. Vacant Land with Site Improvements: $71,000;

6. Morning Star Lodge Commercial Condominium Unit 10: $142,000;

7. Commercial Lot on Wildcat Way: $60,000;

8. Two Condominium Units in Morning Star Lodge: $47,000.

The County petitioned for judicial review of the BTA's decision under Idaho Code section 63-3812. In discovery, the parties exchanged appraisal reports from the same appraisers who testified before the BTA. The parties took the appraisers' depositions, and deposed other witnesses who had testified before the BTA. The County also provided rebuttal reports from experts who had not testified before the BTA. The district court then held a four-day trial that it described as a de novo proceeding. In its case-in-chief, the County offered testimony from Jerry White, the Shoshone County Assessor, and its lead appraisal expert, Kenneth Voss. Taxpayers offered testimony from Tryg Fortun, the owner of the Taxpayer LLCs, Karey Lynn Scholey, Jeff Colburn, and two Silver Mountain employees: Daniel Cox, a ski lift expert, and its lead appraisal expert, John Arney. The County later solicited testimony from its two rebuttal witnesses: Peter Butler, a business appraiser, and Mark Richey, a real estate appraiser.

At the beginning of trial the district court judge stated:

THE COURT: And just to let you know . . . I will inform the parties I purposely did not read the order from the Board of Tax Appeals except for the last page. I didn't want that coming into the mix as this is a trial de novo.

The last page of the BTA decision concluded that the properties should be valued at $6,310,000.

During the County's case-in-chief, Kenneth Voss testified about the value of all the properties in dispute. He testified he considered the three recognized methods of appraisals (sales comparison, cost, and income approaches); however, he only applied the method or combination of methods he believed best suited to the type of property being appraised. The district court found Voss's testimony to be credible, with a few perceived inaccuracies raised during cross-examination.

Taxpayers' valuations for the properties came from its expert witness, John Arney. The district court found Arney's testimony difficult to follow, describing his valuations as "fluid." For example, Arney changed his valuations as to the ski resort several times. It was pointed out on cross-examination that Arney originally valued the ski resort at $980,000 when testifying before the BTA, but that he later changed his opinion at the same hearing to $1,380,000 after discovering

4

a calculation error. Arney again changed his valuation, increasing it to $1,760,000 before the district court. Upon further cross-examination and reexamination of his own calculations at trial, Arney valued the ski resort at $2,460,000. Arney's testimony for the Waterpark also changed. Originally, Arney valued the Waterpark at $1,450,000; however, he later increased that valuation to $1,840,000. By the time of trial, Arney testified the Waterpark had a value of $2,620,000, nearly $800,000 more than he had opined previously. The district court determined "[t]he evolving appraisal figures as to the ski resort and Waterpark [] colored the [c]ourt's view of Mr. Arney's capabilities in having accurately appraised the other properties."

Following the trial, the district court entered its findings of fact, conclusions of law, and order. The district court affirmed the BTA's decision after finding the County failed to meet its burden of proof establishing *how* the decision of the BTA was in error. The court determined "[s]imply presenting a new and different appraisal of the properties is not enough, for it does not satisfy the *burden of proof* requirements of [Idaho Code section 63-3812]." (Emphasis in original). In reaching this conclusion, the district court acknowledged this was "a harsh result" given that it found the County's appraisal expert to be more credible than Taxpayers' expert. Still, the court found the County did not carry its burden to prove the BTA's decision was erroneous by a preponderance of the evidence.

The County filed a motion for reconsideration or, in the alternative, a petition for rehearing or for other relief. The County argued that it had met its burden of showing that the value reached by the BTA was erroneous and that its proffered values were correct. The County maintained that because it proved a value exceeding that of the BTA by a preponderance of the evidence, the County showed how the BTA erred in reaching a lower value. The County also asserted the district court misinterpreted Idaho Code section 63-3812(c), and argued that the "burden of proof" language from the statute requires only that it show the BTA *valuation* is erroneous, not that the valuation is either "*clearly* erroneous" or is not supported by some quantum of evidence. To the extent that a substantial evidence standard applied, the County argued that it demonstrated there was not substantial and competent evidence to support the BTA's value determination.

The district court denied the County's petition for rehearing. The district court rejected the County's arguments and reaffirmed its earlier decision that the "burden of proof" language in section 63-3812(c), requires something more than just showing a different, though credible, valuation. The district court continued, "[t]he argument that providing a different market value for

5

the properties than those values decided by the BTA is an implicit showing of the BTA's error, falls short of giving meaning to all the words in the statute."

In support of its conclusion, the district court referenced several statutes calling for a de novo review before the district court that fail to include language defining the burden of proof. The court noted that the only statutes that include explicit "burden of proof" requirements for a trial de novo appear in title 63, Idaho Code. The court reasoned that the legislature "must have wanted something more from appellants of BTA decisions than just a different property valuation."

The court entered a judgment affirming the BTA decision except for two modified values based on earlier stipulations made by the parties. The County filed a timely notice of appeal.

## II. STANDARD OF REVIEW

"Where the district court conducts a trial de novo in an appeal of a BTA decision, this Court defers to the district court's findings of fact that are supported by substantial evidence, but exercises free review over the district court's conclusions of law." *Canyon Cnty. Bd. of Equalization v. Amalgamated Sugar Co., LLC*, 143 Idaho 58, 60, 137 P.3d 445, 447 (2006) (citing *Idaho Power Co. v. Idaho State Tax Com'n*, 141 Idaho 316, 321, 109 P.3d 170, 175 (2005)). "The construction and application of a statute are pure questions of law over which this Court exercises free review." *Id.* (citing *Ada Cnty. Bd. of Equalization v. Highlands, Inc.*, 141 Idaho 202, 206, 108 P.3d 349, 353 (2005)).

> "The burden of proof shall fall upon the party seeking affirmative relief to establish that the decision made by the board of tax appeals is erroneous. A preponderance of the evidence shall suffice to sustain the burden of proof." I.C. § 63-3812(c). "Factual determinations are not erroneous when they are supported by competent and substantial evidence even though conflicting evidence exists." *Greenfield Village Apartments, L.P. v. Ada Cnty.*, 130 Idaho 207, 209, 938 P.2d 1245, 1247 (1997). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *The Senator, Inc. v. Ada Cnty., Bd. of Equalization*, 138 Idaho 566, 574, 67 P.3d 45, 53 (2003). "Therefore, this Court's inquiry is limited to whether the district court's decision, based on the testimony and evidence received and not objected to [as incompetent], was clearly erroneous." *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 768, 291 P.3d 442, 451 (2012).

*In re Bd. of Tax Appeals, Appeal No. 16-A-1079 (Stender)*, 165 Idaho 433, 437–38, 447 P.3d 881, 885–86 (2019).

## III. ANALYSIS

**A.    The "decision" of the BTA was its valuation of the properties, not the rationale underpinning that valuation.**

The primary issue on appeal is a question of law: what standard of review is imposed by Idaho Code section 63-3812. More specifically, what constitutes a BTA "decision" for a district court's review under the statute. The County claims the district court essentially applied an appellate standard of review instead of evaluating the expert testimony and other evidence on a de novo basis like a trial court, as required by section 63-3812. The County contends the BTA's "decision" was erroneous because of its improper valuation of the properties. The County argues it had no burden to prove *how or why* the BTA's decision was incorrect except to show that its decision on value *was* incorrect.

Tax appeals from the BTA are governed by Idaho Code section 63-3812, which provides in relevant part:

> Appeals may be based upon any issue presented by the appellant to the board of tax appeals and *shall be heard and determined by the court without a jury in a trial de novo on the issues in the same manner as though it were an original proceeding in that court. The burden of proof shall fall upon the party seeking affirmative relief to establish that the decision made by the board of tax appeals is erroneous.* A preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation. The court shall render its decision in writing, including therein a concise statement of the facts found by the court and conclusions of law reached by the court. The court may affirm, reverse or modify the order, direct the tax collector of the county or the state tax commission to refund any taxes found in such appeal to be erroneously or illegally assessed or collected or may direct the collection of additional taxes in proper cases.

I.C. § 63-3812(c) (emphasis added).

The district court unpacked the statute into three component parts: (1) any issue heard on appeal must have been presented to the BTA for its consideration; (2) the matter would be heard de novo by the district court in its capacity as the reviewing court, as if the case had been brought originally before the district court; and (3) the party seeking relief from the BTA decision has the burden of proof to show, by a preponderance of the evidence, that the decision of the BTA was erroneous. The district court found it difficult to reconcile the "de novo" standard with the burden of proof language in section 63-3812. Interpreting the plain language of section 63-3812(c), the court determined "a party appealing a decision of the BTA must show why the BTA was in error. Simply presenting a new and different appraisal of the properties is not enough, for it does not

7

satisfy the *burden of proof* requirements of the statute." (Emphasis in original). The court found its interpretation to be bolstered by the last sentence of the statute which reads, "[t]he court may affirm, reverse or modify the order, direct the tax collector . . . to refund any taxes found in such appeal to be erroneously or illegally assessed." The district court found that it had received no evidence or explanation for why the BTA was in error and held that it could not presume that finding a different valuation to be more reliable than what was found by the BTA proved the BTA's finding was in error. The court acknowledged that this was a "harsh result for the County" given the district court's determination that the County's appraisal expert was more credible than the Taxpayer's appraisal expert, but ultimately held the County did not carry its burden to prove *how* the BTA was in error.

The County's chief argument on appeal is that the "decision" of the BTA was its valuation of the properties, not its rationale for arriving at that valuation. The County concedes it had the burden of proof but claims that the burden pertains only to proving the BTA's ultimate conclusion on valuation was erroneous. We agree. "Trial de novo, this Court has explained, means 'a trying of the matter anew—the same as if it had never been heard before.' " *Canyon Cnty. Bd. of Equalization v. Amalgamated Sugar Co., LLC*, 143 Idaho 58, 61, 137 P.3d 445, 448 (2006) (quoting *Gilbert v. Moore*, 108 Idaho 165, 168, 697 P.2d 1179, 1182 (1985)). Thus, the nature of a de novo trial requires the district court to proceed as if there had been no previous case, no previous decision, and no record to which the parties are bound. Thus, if the district court found that a different valuation was more accurate than the one adopted by the BTA, it should have adopted that valuation.

Judicial review of tax valuation cases operates differently from other judicial review actions in which the district court is bound to review the record in an appellate capacity. *See generally* I.R.C.P. 84(e)(1)(A). Here, the district court erred in treating its review like an appeal, requiring the County to establish how the BTA erred in its analysis. The district court identified the "oppositional and self-dividing nature of the governing statute" in reaching its decision. This is understandable since section 63-3812 explicitly provides that any party "aggrieved by a decision of the board of tax appeals" may take an "appeal . . . to the district court." But the distinction to be drawn in tax appeals like this one is that such an appeal "shall be taken and perfected in accordance with [R]ule 84 of the Idaho [R]ules of [C]ivil [P]rocedure." I.C. § 63-3812(a). Such a "review must be tried in the district court on any and all issues, on a new record." I.R.C.P.

84(e)(1)(C). Thus, the district court must develop and rely on *a new record*. Doing so makes the BTA's prior analysis largely irrelevant, unless it was resubmitted as evidence at the de novo trial; indeed, as the district court noted at the outset, the only part of the BTA decision that was relevant was the last page of its findings and conclusions, which contained its valuation. The district court should have conducted its valuation of the relevant properties anew, based on the evidence presented to it during its de novo trial, without affording any weight to or requiring any argument about the BTA's prior analysis.

In *Canyon County Board of Equalization v. Amalgamated Sugar Co., LLC*, the taxpayer (Amalgamated or TASCO), appealed from a district court order concerning the assessment of industrial property it owned. 143 Idaho at 59, 137 P.3d at 446. Amalgamated operated four sugar beet processing facilities, three of which were in Idaho. *Id*. County assessors relied on information provided by Amalgamated to determine value. In 1997, TASCO purchased Amalgamated stock, which was comprised of a beet growers association and another entity. *Id*. A subsequent appraisal of the property received from those entities revealed the property was worth significantly more than what Amalgamated had been telling the three Counties. As a result, the 2002 assessed value for TASCO's Idaho plants was $167 million, tripling the $55 million valuation calculated under the previously utilized model. *Id*. TASCO appealed the 2002 assessed value to the respective equalization boards in each county, but the assessments were affirmed. TASCO appealed to the BTA and presented an appraisal employing all three legislatively authorized appraisal approaches (sales comparison, cost, and income), dropping its reliance on the earlier model it had recommended. *Id*. The Counties submitted an appraisal containing only a modified version of the "income-like" approach to the valuation of TASCO's property. *Id*. at 60, 137 P.3d at 447. The BTA found TASCO's appraisal to be the most reliable and adopted its significantly lower valuation amounts. *Id*. The Counties sought review by the district court. The district court conducted a de novo trial, allowing the Counties to produce evidence on the three approved approaches to value. TASCO used a slightly modified version of the appraisal it had used before the BTA. *Id*. After reviewing appraisals from both sides, the district court overturned the BTA's decision after finding the Counties' appraisal to be more reliable. *Id*.

On appeal, TASCO argued that the Counties should have been precluded from presenting certain evidence to the district court, because that evidence was not presented to the BTA. Rejecting this argument, this Court stated:

TASCO frames its argument as follows: because each individual approach to value is to be considered an "issue," and because the Counties did not present appraisals containing all three approaches to the BTA, any evidence on those approaches was outside the district court's scope of review. We are not persuaded. The issue before the BTA clearly was the market value of TASCO's sugar beet processing plants, an inquiry that includes a discussion of the three allowable approaches under I.C. § 63-205 . . . . What TASCO actually complains of is new or different *evidence*—not new or different "issues"—presented to the district court on an issue that was litigated before the BTA, the issue of the market value of TASCO's property. There is simply no basis in I.C. § 63-3812 for striking or refusing to consider such evidence, particularly in light of the fact that this is a de novo trial before the district court. Consequently, we conclude the district court did not err in allowing the Counties to present evidence on the three approaches to value.

*Id.* at 61, 137 P.3d at 448 (emphasis in original).

Taxpayers' argument is akin to the argument presented in *Canyon County*—that the Counties were required to limit their claims on *why* the BTA erred by assessing the value as it did. Given the nature of a de novo trial before the district court, this position was rejected. The Counties were properly allowed to produce evidence from all three valuation methods, even though they had not done so before the BTA. This Court ultimately affirmed the district court's reversal of the BTA decision based on the new evidence presented by the Counties as to value. *Id.*

More recently, in *Stender*, SSI Food Services[,] Inc. (SSI) appealed from a district court decision that rejected the BTA's 2016 assessed value of a food processing facility in favor of the county's significantly higher valuation. 165 Idaho at 436, 447 P.3d at 884. The county had originally assessed the property at $18,286,630. SSI appealed to the Board of Equalization claiming the property had a market value of $11,000,000. *Id.* The Board of Equalization upheld the county's higher valuation and SSI appealed to the BTA. *Id.* SSI and the county hired experts who appraised the property at $6,500,000 and $23,000,000 respectively. *Id.* The BTA held SSI satisfied its burden of proving the $18,286,630 valuation was erroneous; however, it did not find adequate support for SSI's expert's valuation of only $6,500,000. *Id.* The BTA reduced the valuation to $10,000,000 without explanation, prompting the county to petition for judicial review. *Id.* at 437, 447 P.3d at 885. After a de novo trial, the district court found that the county met its burden of showing the value of the property exceeded $10,000,000, thus, the conclusion of the BTA was erroneous. *Id.* The district court entered a modified valuation of $17,000,000. *Id.*

SSI appealed to this Court, arguing the district court erred when it modified the BTA valuation because the county did not satisfy its burden of proof and the court's opinion on value

was not supported by substantial and competent evidence. *Id*. This Court highlighted its prior recognition that in property valuation cases "the district court often faces a 'battle of the experts' and the 'difficult task of evaluating competing theories of valuation that, for the most part, utilized accepted valuation methods' and 'were utilized within the bounds of their respective professional standards.' " *Id*. at 438–39, 447 P.3d at 886–87. We examined the evidence and testimony presented at trial, and concluded that after hearing this evidence, the district court properly decided (1) which appraisal method was most applicable for this type of property and (2) which opinion of value was most accurate. *Id*. at 440, 447 P.3d at 888. Thus, we affirmed the district court's conclusion that the BTA valuation was erroneous and that the county's valuation of the property at $17,000,000 was correct because both conclusions were supported by substantial and competent evidence. *Id*.

*Stender* supports the County's position here that a party can appeal a BTA's valuation decision to the district court without necessarily challenging the BTA's reasoning. In reviewing whether the district court applied the proper law to the facts in reaching its decision, we never commented on whether the district court did or should have analyzed "how or why" the BTA decision was incorrect. Rather, the only reference to the BTA's decision was based on value, when the Court affirmed "the district court's conclusion that the BTA['] *valuation was erroneous . . .*" and affirmed the district court's valuation of the property. *Stender,* 165 Idaho at 433, 447 P.3d at 891 (emphasis added).

The County's argument is further buttressed by this Court's recent acknowledgment that, in tax appeal cases, "Idaho law directs the district court to decide the matter anew without granting deference to the BTA." *Idaho State Tax Comm'n v. James*, 169 Idaho 884, 505 P.3d 670, 676 (2022). The district court's requirement here that the County show how the BTA's decision was erroneous gives undue deference to the BTA's decision and how it was reached.

This Court has generally considered valuation to be a question of fact. *Stender*, 165 Idaho at 438, 447 P.3d at 886; *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 769, 291 P.3d 442, 452 (2012) ("The reliability and credibility of the methods employed are questions of fact . . . ."); *Wurzburg v. Kootenai Cnty*., 155 Idaho 236, 245, 308 P.3d 936, 945 (Ct. App. 2013) ("Market value is essentially a factual issue."); *Sammons v. C.I.R.*, 838 F.2d 330, 334 (9th Cir. 1988) ("Valuation is a question of fact."). Taxpayers contend that a factual determination is not erroneous if it is supported by substantial and competent evidence "even though conflicting

11

evidence exists." (Citing *Stender*, 165 Idaho at 438, 447 P.3d at 886 (quoting G*reenfield Village Apartments, L.P. v. Ada Cnty.*, 130 Idaho 207, 209, 938 P.2d 1245, 1247 (1997)). This black-letter statement of the law is correct as far as it goes, but this standard applies to the level of deference this Court provides to the district court's findings and conclusions, not to the way in which the district court undertakes review in a trial de novo.

Taxpayers seek to avoid this result by noting that Idaho Code section 63-511(4), which governs appeals from the Board of Equalization, distinguishes between a "valuation" and a "decision":

> In any appeal taken to the board of tax appeals or the district court pursuant to this section, the burden of proof shall fall upon the party seeking affirmative relief to establish that the valuation from which the appeal is taken is erroneous, or that the board of equalization erred in its decision regarding a claim that certain property is exempt from taxation, the value thereof, or any other relief sought before the board of equalization.

I.C. § 63-511(4). This statute does reference both a decision and a valuation; however, this statute merely offers a separate avenue for relief if a party wishes to appeal straight to the district court from the Board of Equalization, or to appeal an aspect of the Board of Equalization's decision other than the valuation. Nothing in this statute changes the task of a district court in conducting a trial de novo under Idaho Code section 63-3812(c). Appeals under this section are to "be taken and perfected in accordance with [R]ule 84 of the Idaho [R]ules of [C]ivil [P]rocedure." I.C. § 63-3812(a). Rule 84 mandates that "[w]hen the statute provides that review is de novo, the review must be tried in the district court on any and all issues, on a new record." The requirement that the trial be conducted on a new record makes any distinction between "value" and "decision" in section 63-511(4) inconsequential.

Ultimately, the question before the Court is one of statutory interpretation. Statutory interpretation begins with the literal language of the statute. *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011). The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. *Id*. The plain language of section 63-3812(c) specifies that the issues to be tried may include "any issue presented . . . to the board of tax appeals." The County argues that the sole issue was the market value of the property, the BTA determined market value, and the statute allowed for de novo review of that valuation decision. We agree. Such an interpretation does not erase the burden of proof, as the County had to present a preponderance of

12

the evidence to meet its burden of proof. By establishing that its valuation was more likely accurate than not, the County met its burden to establish that the BTA's valuation decision was erroneous.

A market value conclusion is erroneous if it "fails to reflect the fair market or full cash value of the property." *See Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 422, 247 P.3d 644, 649 (2011). A "preponderance of the evidence" is evidence that, when weighed with that opposed to it, has more convincing force and from which results a greater probability of truth. *Harris v. Elec. Wholesale*, 141 Idaho 1, 3, 105 P.3d 267, 269 (2004) (citing *Cook v. W. Field Seeds, Inc.*, 91 Idaho 675, 681, 429 P.2d 407, 413 (1967)).

We conclude that the district court erred in requiring the County to prove something beyond the fair market value of the property at issue. Thus, we reverse the district court's decision and remand the case with instructions for the district court to issue a new decision based on the evidence presented at the de novo trial as to the value of the property.

## IV. CONCLUSION

The district court's decision is reversed, the judgment is vacated, and the case is remanded with instructions for the district court to consider, on the evidence already presented to it, whether the BTA's decision on valuation was erroneous. Costs are awarded as a matter of right to the County as the prevailing party on appeal.

Justices BRODY, STEGNER, MOELLER, and ZAHN **CONCUR.**

13